J-A16033-15

2015 PA Super 199

| TRUST UNDER AGREEMENT OF EDWARD WINSLOW TAYLOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: ELISE W. CARR, EDWARD W. CARR, IAN N. CARR, RICHARD R. CARR, CAROLINE T. CARR, W. SEWELL WALLACE, SUZANNE T. WALLACE, JENNIFER A. WALLACE-COLLINS, EVAN S. WALLACE, CHRISTOPHER G. WALLACE, SAMUEL H. WALLACE, HOPE T. WALLACE & ANTHONY T. WALLACE | No. 2701 EDA 2014 |

Appeal from the Order August 18, 2014
In the Court of Common Pleas of Philadelphia County
Orphans' Court at No(s): 3563 OF 1939

BEFORE: LAZARUS, J., FITZGERALD, J.[*], and PLATT, J.[**]

OPINION BY LAZARUS, J.: **FILED SEPTEMBER 18, 2015**

Appellants, beneficiaries of the Trust Under Agreement of Edward Winslow Taylor, appeal from the order of the Court of Common Pleas of Philadelphia County, Orphans' Court Division, denying their petition to modify a trust agreement. Upon careful review, we reverse.

The Honorable John W. Herron has set forth the relevant factual and procedural history of this matter as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[**] Retired Senior Judge assigned to the Superior Court.

On February 9, 1928, Edward Winslow Taylor ("Settlor" or "Edward Taylor") executed an Agreement of Trust, which he amended on April 20, 1928 and September 15, 1930. In the initial trust document, Edward Taylor appointed The Colonial Trust Company, whose principal place of business was Philadelphia, as trustee. In the September 25, 1930 amendment, Mr. Taylor named the Pennsylvania Company for Insurance on Lives and Granting Annuities [as trustee], noting that it was the successor by merger of The Colonial Trust Company. Wells Fargo Bank, N.A. ("Wells Fargo") is the successor in interest of the original trustee [as the result of numerous mergers].

Edward died on February 6, 1939 and his daughter, Anna Taylor Wallace ("Anna"), became co-trustee[,] serving until her death on August 17, 1971. With his final trust amendment, Edward Taylor emphasized that "his dominant purpose" in creating this trust was "to care for his daughter, Anna Taylor Wallace, and her children living on that date, and that the ultimate limitations as to principal and income were a secondary intent. . . ." Under the terms of the trust, the trustees were directed to distribute the net income to Anna . . . "at convenient times" during the year throughout her lifetime. Anna was given the power by will to designate who should receive the remaining net income upon her death. Anna exercised this power of appointment and provided that her eldest child, Frank R. Wallace, Jr.[,] should receive the net income during his lifetime. Upon the death of [Frank, Jr.], the net income was to be distributed among his children, per stirpes. The trust terminates 20 years after the death of the last survivor of the Settlor, Anna . . ., Frank R. Wallace and Frank R. Wallace, Jr.[,] or on May 4, 2028. Upon termination, the balance in the trust shall be distributed to each of the individuals who were entitled to receive income.

Upon the death of Anna's son [Frank, Jr.] on May 4, 2008, Anthony T. Wallace was next in line to serve as Co-Trustee, but he renounced this position effective May 4, 2008. In August 2009, . . . Wells Fargo filed a Fourth and Final Account of its administration of the trust. With this accounting, Wells Fargo sought court approval under 20 Pa.C.S.A. § 7740.7(b) to divide the trust into four separate trusts for each of Frank [Jr.'s] four surviving children. The trustee also sought court approval of the appointment of each child to serve as co-trustee with Wells Fargo of his or her own trust. This court approved the division of

the trust and the appointment of each of the children as co-trustees by a December 7, 2009 Adjudication. The trust was subsequently divided into four separate trusts, each with an approximate value of $1.8 million.

On September 4, 2013, Elise W. Carr, W. Sewell Wallace and Christopher G. Wallace ("Petitioners"), who are three of the four surviving income beneficiaries of the trust as children of Frank [Jr.], filed a petition to modify the trust agreement. More specifically, they seek to modify paragraph FIFTEENTH of the Trust Agreement because it does not include a provision for the removal and replacement of the corporate trustee[, commonly referred to as a "portability clause,"] which, they maintain, is a standard provision in modern trust agreements. In essence, they propose that the trust document be amended so that in the future a corporate trustee could be removed by the beneficiaries without petitioning a court for approval.

Orphans' Court Opinion, 8/18/14, at 1-3 (footnotes omitted).

No beneficiary of the trust contested the petition, but Wells Fargo opposed the petition and, ultimately, filed a motion for judgment on the pleadings. Petitioners opposed Wells Fargo's motion and filed their own cross-motion for judgment on the pleadings, which Wells Fargo opposed. Following briefing by the parties, the Orphans' Court granted Wells Fargo's motion for judgment on the pleadings and denied Appellants' petition to modify. This timely appeal was filed by all beneficiaries of the trust, including those who were not petitioners in the original Orphans' Court action, but nonetheless had no objection to its prayer.

Appellants raise the following issues for our review:

1. Did the Orphans' Court err when it concluded that the trust modification provisions of 20 Pa.C.S.A. § 7740.1, which were satisfied here, were nonetheless restricted *sub silentio* by 20

Pa.C.S.A. § 7766, because the proposed modification of the trust involves the future ability to remove a trustee?

2.  Did the Orphans' Court err when, in derogation of well-settled principles of statutory construction, it stretched to override the clear and unambiguous text of the trust modification provisions of 20 Pa.C.S.A. § 7740.1?

Brief of Appellants, at 4.

We begin by noting our scope and standard of review.  When the Orphans' Court arrives at a legal conclusion based on statutory interpretation, our standard of review is *de novo* and our scope of review is plenary.  **Estate of Fuller**, 87 A.3d 330, 333 (Pa. Super. 2014), citing **Brown v. Levy**, 73 A.3d 514, 517 (Pa. 2013).

The interpretation of a statute is a question of law, and our primary objective is to give effect to the intent of the General Assembly.  **In re: McKinney**, 67 A.3d 824, 831 (Pa. Super. 2013).  In this regard, the plain language of a statute is the foremost indication of legislative intent.  **Id.**

> It is only when the words of a statute are not explicit that a court may resort to other considerations in order to ascertain legislative intent.  Consistently with the Statutory Construction Act, this Court has repeatedly recognized that rules of construction are to be invoked only when there is an ambiguity.

**Cavallini v. Pet City & Supplies, Inc.**, 848 A.2d 1002, 1006 (Pa. Super. 2004) (punctuation and citations omitted).  "If the text of the statute is clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."  **In re T.P.**, 78 A.3d 1166, 1174 (Pa. Super. 2013) (internal quotation marks omitted).  Finally, to the extent of a

conflict between the text of a statute and the comments thereto, the text of the statute controls. *See* 1 Pa.C.S.A. § 1939.[1]

Although the Appellants have raised two separate questions for our review, the central issue in this matter is whether the Orphans' Court committed an error of law in its application of section 7740.1 to Appellants' request to modify the trust. Specifically, we must determine whether the court improperly "imported" into its analysis the restrictions on the removal of trustees contained in section 7766.

In their petition to modify the trust, Appellants sought to modify paragraph FIFTEENTH to allow for the removal and replacement of the corporate trustee by the beneficiaries, without the approval of the court. Appellants noted that "[p]rovisions regarding the removal and replacement of corporate trustees are standard in modern trust agreements." Petition to

---

[1] Section 1939 provides:

> The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report.

1 Pa.C.S.A. § 1939.

Modify Trust Agreement, 9/4/13, at ¶ 23. Pursuant to the requirements of section 7740.1, Appellants averred that the proposed modifications were not inconsistent with a material purpose of the trust and that the interests of non-consenting beneficiaries were adequately represented. Presently, the terms of the trust provide for the resignation and replacement of a trustee, but not removal. Specifically, paragraph FIFTEENTH provides as follows:

> FIFTEENTH: The Trustee is hereby authorized to resign as Trustee of this trust upon giving ninety day's [sic] written notice of such resignation, duly signed and acknowledged by one of its officers, and delivered personally or by registered mail to the Settlor or to the beneficiaries if the Settlor is deceased. Upon such resignation or other termination of this trust, the Trustees may account for its [sic] administration of the said trust fund to the Settlor, or to the beneficiaries if the Settlor is deceased, and, upon so accounting to the satisfaction of the Settlor or the beneficiaries, may have its accounts finally settled and adjusted in and by said account, and may be discharged from liability hereunder without any application to or action by any court. In case of the resignation, removal or inability to act of the Trustee, a new trustee may be appointed (1) by the Settlor if alive and able to act; or (2) by the beneficiary, provided, however, that such substituted Trustee shall be a recognized banking institution in the City of Philadelphia, Pennsylvania.

Agreement of Trust, at ¶ FIFTEENTH.

The petitioners sought to modify paragraph FIFTEENTH as follows:

FIFTEENTH:

A. The Trustee is hereby authorized to resign as Trustee of this Trust upon giving ninety day's [sic] written notice of such resignation, duly signed and acknowledged by one of its officers, and delivered personally or by registered mail to the beneficiaries of the Trust. Upon such resignation or other termination of this Trust, the Trustee may account for its administration of said Trust to the beneficiaries, and, upon so

accounting to the satisfaction of the beneficiaries, may be discharged from liability hereunder without any application to, or action by, and Court. In the case of resignation or inability to act of the Trustee, a majority of the *sui juris* income beneficiaries shall thereupon appoint in writing a substitute Corporate Trustee, which substitute Corporate Trustee shall be located in Pennsylvania.

B. From time to time and without cause, the income beneficiaries who are then *sui juris* may remove any Corporate Trustee acting hereunder by a writing delivered to such Corporate Trustee stating the effective date of the removal; provided that if there are then five or fewer *sui juris* income beneficiaries, all *sui juris* income beneficiaries must consent in writing to the removal, and if there are then more than five *sui juris* income beneficiaries, a majority of *sui juris* income beneficiaries must consent in writing to the removal.

C. If the *sui juris* income beneficiaries exercise their power to remove a Corporate Trustee under subparagraph (B) above, the *sui juris* income beneficiaries who consented to the removal shall thereupon appoint in writing a substitute Corporate Trustee, which substitute Corporate Trustee shall be located in Pennsylvania.

D. For purposes of this Paragraph FIFTEENTH, reference to the 'Trust' shall include any subdivided trust, and references to '*sui juris* income beneficiaries' shall mean such beneficiaries of any subdivided trust. Actions taken with respect to resignation, removal or appointment of a trustee of a subdivided trust may, but need not, also be taken with respect to any other subdivided trust.

Petition to Modify Trust Agreement, 9/4/13, at ¶ 24.

In its motion for judgment on the pleadings, Wells Fargo asserted that the Appellants improperly relied upon section 7740.1 as authority for their request to modify the trust. Instead, Wells Fargo claimed that "[s]ection 7766 of the PEF Code is the exclusive provision for removal of trustees[.]" Motion for Judgment on the Pleadings, 2/24/14, at ¶ 17. Because the

Appellants did not aver the elements required by section 7766 in their petition to modify, Wells Fargo asserted, the petition should be denied as a matter of law.

Appellants, in their response to Wells Fargo's motion for judgment on the pleadings and their own cross motion for judgment on the pleadings, argued that Wells Fargo's section 7766 argument was misplaced and that the language of section 7740.1 is clear, unambiguous and not limited, *sub silentio*, by the provisions of section 7766. Appellants noted that they were not seeking to remove the trustee, but rather to modify the trust. As such, Appellants asserted that section 7740.1 was the salient provision of the PEF Code, that they had satisfied its requirements and, accordingly, that judgment in their favor was appropriate.

Section 7740.1 of the Probate, Estates and Fiduciaries Code ("PEF Code") governs the modification of noncharitable irrevocable trusts by consent and provides, in relevant part, as follows:

> § 7740.1. Modification or termination of noncharitable irrevocable trust by consent – UTC 411
>
> (a)    Consent by settlor and beneficiaries. --A noncharitable irrevocable trust may be modified or terminated upon consent of the settlor and all beneficiaries even if the modification or termination is inconsistent with a material purpose of the trust.
>
> . . .
>
> (b)    Consent by beneficiaries with court approval. --A noncharitable irrevocable trust may be modified upon the consent of all the beneficiaries only if the court concludes that

the modification is not inconsistent with a material purpose of the trust.

. . .

(b.1) Spendthrift provision. --A spendthrift provision in a trust instrument is presumed to constitute a material purpose of the trust.

. . .

(d) Consent by some beneficiaries with court approval. --If not all the beneficiaries consent to a proposed modification or termination of the trust under subsection (a) or (b), the modification or termination may be approved by the court only if the court is satisfied that:

(1) if all the beneficiaries had consented, the trust could have been modified or terminated under this section; and

(2) the interests of a beneficiary who does not consent will be adequately protected.

20 Pa.C.S.A. § 7740.1.

Section 7766 of the PEF Code provides, in relevant part, as follows:

§ 7766. Removal of trustee -- UTC 706.

(a) Request to remove trustee; court authority. --The settlor, a cotrustee or a beneficiary may request the court to remove a trustee or a trustee may be removed by the court on its own initiative.

(b) When court may remove trustee. --The court may remove a trustee if it finds that removal of the trustee best serves the interests of the beneficiaries of the trust and is not inconsistent with a material purpose of the trust, a suitable cotrustee or successor trustee is available and:

(1) the trustee has committed a serious breach of trust;

(2) lack of cooperation among cotrustees substantially impairs the administration of the trust;

(3) the trustee has not effectively administered the trust because of the trustee's unfitness, unwillingness or persistent failures; or

(4) there has been a substantial change of circumstances. A corporate reorganization of an institutional trustee, including a plan of merger or consolidation, is not itself a substantial change of circumstances.

20 Pa.C.S.A. § 7766.

Wells Fargo presents an extensive argument based on the comments to the statutory provisions in question. Wells Fargo cites to the Uniform Law Comment to section 7740.1, which states:

Subsection (b), similar to Restatement Third but not Restatement Second, allows modification by beneficiary action. The beneficiaries may modify any term of the trust if the modification is not inconsistent with a material purpose of the trust. Restatement Third, though, goes further than this Code in also allowing the beneficiaries to use trust modification as a basis for removing the trustee if removal would not be inconsistent with a material purpose of the trust. Under the Code, however, Section 706 [20 Pa.C.S. § 7766] is the exclusive provision on removal of trustees.

20 Pa.C.S.A. § 7740.1, comment (bracket in original). Wells Fargo asserts that this "comment is determinative here." Brief of Appellee, at 20. Specifically, Wells Fargo argues that:

[t]he comment clearly states that the provision adopted in Pennsylvania as [s]ection 7740.1 was **not** intended to be used to modify provisions relating to the removal of trustees. The UTC was drafted in close coordination with the writing of the Third Restatement of Trusts. Uniform Trust Code, 7C U.L.A. 362 (2006) (Prefatory Note). When the Third Restatement was published, it included the suggestion that [s]ection 65 of the Third Restatement (which corresponds to [s]ection 411 of the UTC and to [s]ection 7740.1 of the [PEF Code]) *could* be used to modify trustee removal provisions. RESTATEMENT (THIRD) OF TRUSTS § 65, Cmt. (f) (2003). In response, the drafters of the

> UTC added the official comment to [s]ection 411 of the UTC, explicitly rejecting the Third Restatement position.

*Id.* Because the General Assembly's Advisory Committee adopted the language of UTC section 411 as section 7740.1 of the PEF Code, Wells Fargo argues, "the Advisory Committee clearly agreed with the UTC drafters about the limited reach of that provision and [s]ection 7766's exclusive role in trustee removal efforts." *Id.* Likewise, Wells Fargo argues, in enacting the provision, the General Assembly was fully aware of and endorsed the official comment. Appellants' argument – that the General Assembly's failure to expressly exempt from the terms of section 7740.1 requests to modify trustee-removal provisions means that the provision may be used to do so – is, according to Wells Fargo, "nonsensical." *Id.* at 21.

The Orphans' Court adopted the position espoused by Wells Fargo, concluding that Appellants' petition "raises novel issues of statutory interpretation of the PEF Code and, in particular, the interrelationship of section 7740.1(d) and section 7766." Orphans' Court Opinion, 8/18/14, at 4. The court found that the interrelationship between the two statutes "creates a clear ambiguity . . . which spans both of [the] sections." *Id.* at 10. Specifically, the court asserts that section 7766 is implicated as a result of the language of subsection 7740.1(d)(1), which allows modification where the court is satisfied that "if all the beneficiaries had consented, the trust could have been modified . . . under this section[.]" *Id.* at 7. The court found that this language, "though less than clear, opens the door to Wells

Fargo's compelling arguments that the legality of the proposed modification for removal of trustees must be analyzed in conjunction with the more specific section of the PEF Code that focuses sharply on removal of a trustee: Section 7766." *Id.* Employing the rules of statutory construction,[2] the court concluded that the broad provisions of section 7740.1 must yield to the specific removal provisions of section 7766.

We reject the Orphans' Court's conclusions for several reasons. First, contrary to Wells Fargo's contention and the conclusion reached by the court, Appellants did not seek currently to remove Wells Fargo as trustee. Rather, Appellants requested strictly to amend the trust to provide the flexibility to allow the beneficiaries to remove the trustee if, at some future point, they saw fit to do so. By imputing motives to the Appellants based on assumptions not supported by the record, the court engaged in

_____

[2]     Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.C.S.A. § 1933.

inappropriate speculation and conjecture and based its finding on a false premise.[3]

Second, having established that false premise, the Orphans' Court proceeded to improperly apply the rules of statutory construction to interpret a statute that is, in fact, unambiguous on its face. The court's contorted reading of the words "under this section" in section 7740.1(d)(1) – apparently construed as a reference to the Uniform Trust Act as a whole – provided an opening for the wholesale importation of the requirements of section 7766. We see no textual support for this strained interpretation. Rather, it is clear that subsection (d)(1)'s reference to "this section" refers only to section 7740.1 itself. Read in its proper context, subsection (d)(1) allows modification by some beneficiaries, with court approval, in the same manner as would have been allowed under subsection (b), which permits court modification where (1) all beneficiaries consent and (2) the modification "is not inconsistent with a material purpose of the trust." 20 Pa.C.S.A. §7740.1(b).

Contrary to the findings of the Orphans' Court, section 7740.1 is clear and unambiguous on its face, and must be applied as such. As written, the statute contains no language excluding from its ambit the modification of

---

[3] Indeed, the Orphans' Court itself acknowledged that "[t]he [Appellants] have not raised the more specific issue of whether Wells Fargo should be removed as corporate trustee." Orphans' Court Opinion, 8/18/14, at 10-11.

trustee-removal provisions. Had the legislature wished to restrict the application of section 7740.1 to exclude modifications involving portability provisions, it certainly could have created an exception,[4] or included an incorporating cross-reference to section 7766.[5] It chose not to do so. It is not for the courts to impose additional restrictions as they may see fit, regardless of what the court may perceive as the petitioners' underlying motives.

_____

[4] For example, the Ohio Legislature substantially adopted UTC Section 411, but expressly prohibited modification to permit removal of a trustee:

> A noncharitable irrevocable trust may be modified, but not to remove or replace the trustee, upon consent of all of the beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust.

OHIO REV. CODE ANN. § 5804.11(B).

[5] The legislature did exactly that in numerous other sections of the Uniform Trust Act. *See, e.g.*, 20 Pa.C.S.A. §7739 (governing noncharitable trusts without ascertainable beneficiaries "[e]xcept as otherwise provided in section 7738 (relating to trust for care of animal – UTC 408) or by another statute"); 20 Pa.C.S.A. §7742(c) (governing the effect of spendthrift provisions "[e]xcept as otherwise provided in this subchapter"); 20 Pa.C.S.A. §7780.1 (governing enforcement and defense of claims of and against a trust "[e]xcept as provided in section 7770 (relating to liability of successor trustee)"); 20 Pa.C.S.A. § 7798(b)(3) (governing the effect of failing to present a claim at audit "except as otherwise provided in section 3521 (relating to rehearing; relief granted)"); 20 Pa.C.S.A. 7799 (relating to income on distributive shares "[e]xcept as otherwise provided by the trust instrument or by the provisions of section 3543 (relating to income on distributive shares)").

Finally, we note that Wells Fargo's heavy reliance on the statutory comments is misplaced. "[On]ly when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of statutory construction factors found in [s]ection 1921(c)."[6] *Commonwealth v. Brown*, 981 A.2d 893, 898 (Pa. 2009). As we have already noted, the words of section 7740.1 are clear and unambiguous on their face. Accordingly, it is unnecessary and, indeed, improper to resort to the canons of statutory construction. *Cavallini*, *supra*. *See also* 1

_____

[6] Section 1921(c) provides as follows:

(c) Matters considered in ascertaining intent. --**When the words of a statute are not explicit**, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c) (emphasis added).

- 15 -

Pa.C.S.A. § 1939 (where conflict exists between comments and statutory language, statutory language controls).

Because the Orphans' Court erroneously imposed upon the Appellants requirements not contemplated by the plain language of section 7740.1, we are constrained to reverse the order granting judgment on the pleadings in favor of Wells Fargo and denying Appellants' petition to modify. We remand the case to the Orphans' Court for disposition of the Appellants' petition on its merits in accordance with the dictates of this opinion.

Order reversed. Case remanded for proceedings in accordance with the dictates of this opinion. Jurisdiction relinquished.

FITZGERALD, J., Joins the majority.

PLATT, J., Files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2015