**[J-5-2017]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| TRUST UNDER AGREEMENT OF EDWARD WINSLOW TAYLOR | : | No. 15 EAP 2016 |
| | : | |
| | : | Appeal from the judgment of Superior |
| | : | Court entered on 09/18/2015 at No. |
| APPEAL OF: WELLS FARGO BANK | : | 2701 EDA 2014, reconsideration denied |
| | : | 11/25/2015 reversing and remanding |
| | : | the order entered 08/18/2014 of the |
| | : | Court of Common Pleas of Philadelphia |
| | : | County Orphans' Court at No 3563 IV of |
| | : | 1939 |
| | : | |
| | : | ARGUED: March 7, 2017 |

**OPINION**

**JUSTICE DONOHUE**                                    **DECIDED: July 19, 2017**

We granted discretionary review in this case to determine whether the Superior

Court erred in ruling that beneficiaries of the trust of Edward Winslow Taylor (the "Taylor

Trust") could modify its terms to add a "portability clause" to permit them to replace the

corporate trustee at any time, at their discretion, without cause or judicial approval.[1]

The beneficiaries seek modification pursuant to section 7740.1 of the Uniform Trust Act

("UTA"), 20 Pa.C.S. §§ 7701-7799.3.  The current trustee of the Taylor Trust, Wells

Fargo Bank ("Wells Fargo"), contends that the UTA does not permit amendment to add

---

[1] A "portability clause" permits a settlor or beneficiary to change the corporate fiduciary named in a trust at any time without judicial intervention, causing the trust to be "portable" from one trustee to another.  *See In re McKinney*, 67 A.3d 824, 826 (Pa. Super. 2013).

a portability clause, and that instead a trustee may be removed only by a court upon a determination that the more onerous requirements of section 7766 of the UTA, titled "Removal of trustee," have been satisfied. For the reasons that follow, we conclude that the UTA does not permit the removal and replacement of a trustee without Orphans' Court approval in accordance with section 7766. Accordingly, we reverse the Superior Court's decision.

The UTA is Pennsylvania's modified enactment of the Uniform Trust Code ("UTC"), which was approved and recommended by the National Conference of Commissioners on Uniform State Laws. Pennsylvania's Advisory Committee on Decedents' Estates Laws of the Joint State Government Commission ("JSGC") drafted the UTA based upon the 2003 version of the UTC. With these reports and recommendations of the JSGC, the General Assembly enacted the UTA, effective November 6, 2006. The UTA, as part of the Pennsylvania's Probate, Estates and Fiduciaries Code, 20 Pa.C.S. §§ 101-8815, constitutes a comprehensive codification of trust law in this Commonwealth, and by its terms applies generally to "all trusts created before, on or after" its effective date. Act of July 7, 2006, P.L. 625, 702, §16(3).

As indicated above, this appeal requires this Court to consider the interplay between sections 7740.1 and 7766 of the UTA. We set these provisions forth at the outset. Section 7740.1 provides, in relevant part, as follows:

> **§ 7740.1. Modification or termination of noncharitable irrevocable trust by consent**
>
> * * *
>
> **(b) Consent by beneficiaries with court approval.--** A noncharitable irrevocable trust may be modified upon the consent of all the beneficiaries only if

the court concludes that the modification is not inconsistent with a material purpose of the trust.

\* \* \*

**(d) Consent by some beneficiaries with court approval.--**If not all the beneficiaries consent to a proposed modification or termination of the trust under subsection (a) or (b), the modification or termination may be approved by the court only if the court is satisfied that:

> (1) if all the beneficiaries had consented, the trust could have been modified or terminated under this section; and

> (2) the interests of a beneficiary who does not consent will be adequately protected.

20 Pa.C.S. § 7740.1(b), (d).  Section 7766 provides, in relevant part

### § 7766. Removal of trustee
\* \* \*

**(b) When court may remove trustee.--**The court may remove a trustee if it finds that removal of the trustee best serves the interests of the beneficiaries of the trust and is not inconsistent with a material purpose of the trust, a suitable cotrustee or successor trustee is available and:

> (1) the trustee has committed a serious breach of trust;

> (2) lack of cooperation among cotrustees substantially impairs the administration of the trust;

> (3) the trustee has not effectively administered the trust because of the trustee's unfitness, unwillingness or persistent failures; or

> (4) there has been a substantial change of circumstances. A corporate reorganization of an institutional trustee, including a plan of merger or consolidation, is not itself a substantial change of circumstances.

20 Pa.C.S. § 7766(b).

Edward Winslow Taylor, the settlor, established the Taylor Trust by execution of an Agreement of Trust on February 9, 1928, which was twice amended, first on April 20, 1928 and a second time on September 25, 1930.  Its stated purpose was to care for his

daughter (Anna Taylor Wallace) and her children living at the time of its creation. In the original Agreement of Trust, the settlor named "The Colonial Trust Company or its successors" as the corporate trustee. By the time of the 1930 amendment, Colonial had merged into a successor corporation, and the settlor acknowledged the successor as the new corporate trustee. At the time of Edward Taylor's death in 1939, pursuant to the terms of the Agreement of Trust, Anna Wallace became the co-trustee along with the corporate trustee. Upon Anna's death in 1971, her sole surviving son, Frank R. Wallace, became the co-trustee. Frank Wallace, Jr. died in 2008 and was survived by four children. Anthony T. Wallace was next in line to serve as co-trustee, but he renounced the appointment. In 2009, Wells Fargo, which, through a series of subsequent mergers, had become the corporate trustee, sought court approval to divide the Taylor Trust into four separate and equal trusts, one for each of Anna Wallace's surviving grandchildren. The Orphans' Court approved the request, appointing each of the four grandchildren as the co-trustee of his or her separate trust.

The Taylor Trust is irrevocable and terminates in 2028. The trust document executed in 1928 permitted the corporate trustee, in its judgment, to deplete the principal for the benefit of Anna Wallace or her children. In the 1930 amendment, however, this power was eliminated to provide only for the distribution of income. The trustees have common powers over trust management, including discretion regarding investments. While the 1928 version of the Agreement of Trust provided that disputes would be resolved by arbitration, the 1930 amendment removed that provision. The Agreement of Trust states that if the position of corporate trustee becomes vacant "as a result of the resignation, removal or inability to act," the settlor (if alive) or the

beneficiary may appoint a new one, with the only limitation being that the new trustee "shall be a recognized banking institution in the City of Philadelphia, Pennsylvania." Petition to Modify Trust Agreement, 9/4/2013, at Ex. A, ¶ FIFTEEN.[2]  Importantly for present purposes, the above reference to the removal of the corporate trustee is not defined or further explained, and the Agreement of Trust does not expressly provide the beneficiaries with any power to remove the corporate trustee.

On September 4, 2013, three of Anna Wallace's surviving grandchildren, Elise W. Carr, W. Sewell Wallace and Christopher G. Wallace (collectively, "Beneficiaries"), citing to section 7740.1 of the UTA, petitioned the Philadelphia Orphans' Court to modify the Taylor Trust.  Specifically, they sought to add a portability provision giving themselves the power, without court approval, to remove the corporate trustee "[f]rom

---

[2]  Paragraph FIFTEEN provides in full as follows:

> FIFTEENTH: The Trustee is hereby authorized to resign as Trustee of this trust upon giving ninety day's [sic] written notice of such resignation, duly signed and acknowledged by one of its officers, and delivered personally or by registered mail to the Settlor or to the beneficiaries if the Settlor is deceased.  Upon such resignation or other termination of this trust, the Trustees may account for its [sic] administration of the said trust fund to the Settlor, or to the beneficiaries if the Settlor is deceased, and, upon so accounting to the satisfaction of the Settlor or the beneficiaries, may have its accounts finally settled and adjusted in and by said account, and may be discharged from liability hereunder without any application to or action by any court. In case of the resignation, removal or inability to act of the Trustee, a new trustee may be appointed (1) by the Settlor if alive and able to act; or (2) by the beneficiary, provided, however, that such substituted Trustee shall be a recognized banking institution in the City of Philadelphia, Pennsylvania.

Petition to Modify Trust Agreement, 9/4/2013, at Ex. A, ¶ FIFTEEN.

time to time and without cause" and to appoint a new corporate trustee of their choosing. Petition to Modify Trust Agreement, 9/4/2013, ¶ 24. In particular, the Beneficiaries proposed that the following language be added to paragraph fifteen of the Agreement of Trust:

> A. The Trustee is hereby authorized to resign as Trustee of this Trust upon giving ninety day's [sic] written notice of such resignation, duly signed and acknowledged by one of its officers, and delivered personally or by registered mail to the beneficiaries of the Trust. Upon such resignation or other termination of this Trust, the Trustee may account for its administration of said Trust to the beneficiaries, and, upon so accounting to the satisfaction of the beneficiaries, may be discharged from liability hereunder without any application to, or action by, any Court. In the case of resignation or inability to act of the Trustee, a majority of the *sui juris* income beneficiaries shall thereupon appoint in writing a substitute Corporate Trustee, which substitute Corporate Trustee shall be located in Pennsylvania.

> B. From time to time and without cause, the income beneficiaries who are then *sui juris* may remove any Corporate Trustee acting hereunder by a writing delivered to such Corporate Trustee stating the effective date of the removal, provided that if there are then five or fewer *sui juris* income beneficiaries, all *sui juris* income beneficiaries must consent in writing to the removal, and if there are then more than five *sui juris* income beneficiaries, a majority of *sui juris* income beneficiaries must consent in writing to the removal.

> C. If the *sui juris* income beneficiaries exercise their power to remove a Corporate Trustee under subparagraph (B) above, the *sui juris* income beneficiaries who consented to the removal shall thereupon appoint in writing a substitute Corporate Trustee, which substitute Corporate Trustee shall be located in Pennsylvania.

> D. For purposes of this Paragraph FIFTEENTH, reference to the 'Trust' shall include any subdivided trust, and references to *'sui juris* income beneficiaries' shall mean such beneficiaries of any subdivided trust. Actions taken with respect to resignation, removal or appointment of a trustee

of a subdivided trust may, but need not, also be taken with respect to any other subdivided trust.

*Id.* In their petition to modify the trust agreement, the Beneficiaries did not expressly request the removal of Wells Fargo as the corporate trustee.

Wells Fargo opposed the petition and moved for judgment on the pleadings, arguing that in Pennsylvania trustees must be removed in accordance with the dictates of section 7766(b) of the UTA. Wells Fargo contended that a trust agreement may not be modified pursuant to section 7740.1 to provide beneficiaries of a trust with the power to remove the trustee without court approval. The Beneficiaries filed a cross-motion for judgment on the pleadings, asserting that section 7740.1 does permit such a modification. In response to this cross-motion, Wells Fargo also argued that even if section 7740.1 could be utilized to effectuate a modification permitting the removal of a trustee, the Beneficiaries' proposed trust modification did not satisfy the requirements of section 7740.1 because the modification was inconsistent with a material purpose of the Taylor Trust.

In a written opinion dated August 18, 2014, the Orphans' Court granted Wells Fargo's motion for judgment on the pleadings. Reviewing the legislative history of sections 7740.1 and 7766 and considering principles of statutory construction, the Orphans' Court determined that "[i]t clearly was not the manifest intention of the Pennsylvania legislature to allow beneficiaries to remove a trustee based upon their agreement and without satisfying the requirements of section 7766 where the settlor made no provision for trustee removal." Orphans' Court Opinion, 8/18/2014, at 10. The Orphans' Court thus held that the "beneficiaries' attempt to use the broad modification

provisions in section 7740.1(d) to eviscerate section 7766 must therefore yield to the specific removal provisions in section 7766." *Id.*

The Superior Court reversed. Of primary significance to the Superior Court was its recognition that the Beneficiaries did not currently seek to remove Wells Fargo as the corporate trustee, and that their request was instead limited to amendment of the trust agreement "to provide flexibility to allow the beneficiaries to remove the trustee if, at some future point, they saw fit to do so." *In re Trust Under Agreement of Taylor*, 124 A.3d 334, 341 (Pa. Super. 2015). Having eliminated this "false premise," the Superior Court observed that section 7740.1 is not ambiguous on its face and "contains no language excluding from its ambit the modification of trustee-removal provisions." *Id.* If the General Assembly had intended for application of section 7740.1 to exclude modifications relating to the removal of a trustee, it could have done so expressly or created a cross-reference to section 7766. *Id.* Finally, the Superior Court rejected Wells Fargo's emphasis on the statutory comments as guides to interpretation, in particular the comment following section 7740.1 that section 7766 is the "exclusive provision on removal of trustees." *Id.* at 342. According to the Superior Court, because the language in section 7740.1 is clear and unambiguous, "it is unnecessary and, indeed, improper to resort to canons of statutory construction." *Id.* (citing *Cavallini v. Pet City & Supplies, Inc.*, 848 A.2d 1002, 1008 (Pa. Super. 2004); 1 Pa.C.S. § 1939).

Senior Judge William H. Platt dissented, arguing that the special provision codified in section 7766 prevails over the general provision found in section 7740.1. *Id.* (Platt, J., dissenting). Judge Platt concluded that there is an irreconcilable conflict between the two provisions, and that if the General Assembly had intended to expand

the grounds for removal of a corporate trustee, it could have done so expressly when it enacted the UTA. *Id.* at 343. Judge Platt disagreed with the majority's failure to recognize the significance of its decision, as beneficiaries seeking to avoid the rigorous requirements of section 7766 may instead seek to modify the trust under section 7740.1, which would for all practical purposes eviscerate section 7766 and render it meaningless. *Id.* In light of his belief that the General Assembly intended to require beneficiaries to utilize section 7766 when seeking to remove a trustee, Judge Platt would have affirmed the Orphans' Court decision. *Id.*

This Court granted discretionary review to determine whether the Superior Court erred in holding that beneficiaries may amend the terms of a trust to permit the removal of a trustee without judicial approval. *In re Taylor*, 134 A.3d 447 (Pa. 2016). As this issue involves the proper interpretation of a statute, it is a pure question of law, for which our standard of review is de novo and our scope of review is plenary. *See, e.g.*, *A. Scott Enterprises, Inc. v. City of Allentown*, 142 A.3d 779, 786 (Pa. 2016); *In re Estate of Stephano*, 981 A.2d 138, 140 (Pa. 2009).

Wells Fargo argues that the Superior Court erred by refusing to apply basic principles of statutory construction to resolve the obvious inconsistency between sections 7740.1 and 7766. The Superior Court found no ambiguity that necessitates application of rules of statutory interpretation, *Taylor*, 124 A.3d at 342, but Wells Fargo contends that it did so by viewing section 7740.1 in isolation, without considering it in relation to the UTA as a whole (and section 7766 in particular). When the UTA is read as a whole, Wells Fargo insists that the General Assembly did not intend for section 7740.1 to trump section 7766. If the Superior Court's decision is allowed to stand, Wells

Fargo predicts that beneficiaries seeking to remove trustees will no longer resort to section 7766, as amendment pursuant to section 7740.1 accomplishes the same result with far less burden. Wells Fargo thus maintains that the Superior Court's decision renders section 7766 superfluous and bestows upon section 7740.1 an expanded scope in the UTA never intended by the General Assembly.

Wells Fargo directs this Court to rules of statutory construction that it contends weigh favorably in its interpretation of the UTA. The comments of a drafting commission are evidence of legislative intent, but the Superior Court refused to consider the JSGC comment following section 7740.1, which provides that section 7766 is the "exclusive provision on removal of trustees." The Superior Court likewise did not review Pennsylvania law prior to the enactment of the UTA on the issue of removal of trustees or consider the policy reasons for requiring judicial review before permitting the discharge and replacement of a trustee. According to Wells Fargo, Pennsylvania has always shown great deference to the settlor's selection of the trustee and has never allowed trust beneficiaries to amend a trust to add a portability clause. Wells Fargo notes that in connection with its enactment of the UTA in 2006, the General Assembly signaled that it did not seek to make it easier to remove trustees, as it rejected a draft provision in the UTC that would have permitted the removal of a trustee upon the unanimous agreement of all of a trust's beneficiaries.

Conversely, the Beneficiaries argue that portability clauses are common in modern trust instruments, particularly given the significant restructuring of the banking industry in the last several decades. According to the Beneficiaries, they should be permitted to amend the trust agreement so that they are placed on the same footing as

the beneficiaries of modern trusts, rather than be held captive to Wells Fargo as a derivative trustee. They argue that Edward Winslow Taylor, the settlor of the Taylor Trust, could not have contemplated the changes in the banking world and could not have known that the trustee he named, the Colonial Trust Company, would, through a series of mergers, become Wells Fargo, headquartered in San Francisco. At the same time, the Beneficiaries emphasize that they have not sought to remove Wells Fargo as the trustee and that any speculation regarding their future intent is irrelevant and unsubstantiated.

The Beneficiaries contend that the UTA provides a set of default rules in circumstances where the trust agreement is silent, and that section 7766 is one such default provision. Section 7766 does not, however, limit modifications to a trust agreement pursuant to section 7740.1, including the addition of a portability clause if so requested. The Beneficiaries assert that the language of section 7740.1 is not ambiguous in any respect and that Wells Fargo is attempting to place restrictions on its use by beneficiaries that the General Assembly did not adopt. In other words, the Beneficiaries insist that Wells Fargo has created a conflict between sections 7740.1 and 7766 that simply does not exist, and is misusing rules of statutory interpretation to thwart the clearly stated intentions of the legislature. The two provisions address different trust issues: section 7740.1 permits modification of the trust agreement to provide beneficiaries with the flexibility to replace a trustee at some future date, while section 7766 allows a court to replace a trustee immediately based upon certain present facts and circumstances.

The Beneficiaries, based upon their insistence that no conflict exists, support the Superior Court's decision not to apply rules of statutory construction. If the General Assembly had intended to restrict the ability of beneficiaries to modify a trust to add portability clauses, it could easily have done so with limiting language or with a cross-reference to section 7766. To this end, the Beneficiaries note that other states, when adopting their versions of the UTC, expressly precluded modification to permit portability. Pennsylvania's General Assembly did not similarly prohibit modification to allow portability, and the Beneficiaries assert that it is not this Court's province to engage in judicial rewriting of the UTA to insert limitations that the legislature did not choose to include.

The issue presented here requires that we construe the interplay between two provisions of Pennsylvania's UTA. The Statutory Construction Act, 1 Pa.C.S. §§ 1901-1991, sets forth principles of statutory construction to guide a court's efforts with respect to statutory interpretation. In so doing, however, the Act expressly limits the use of its construction principles. The purpose of statutory interpretation is to ascertain the General Assembly's intent and to give it effect. 1 Pa.C.S. § 1921(a). In discerning that intent, courts first look to the language of the statute itself. *Mohamed v. Com., Dep't of Transp., Bureau of Motor Vehicles*, 40 A.3d 1186, 1193 (Pa. 2012). If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning. See 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). Courts may apply the rules of statutory construction only when the statutory

language is not explicit or is ambiguous. 1 Pa.C.S. § 1921(c); *Nardone v. Com., Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 744 (Pa. 2015) ("Resort to the rules of statutory construction is to be made only when there is ambiguity."); *Allstate Prop. & Cas. Ins. Co. v. Wolfe*, 105 A.3d 1181, 1186–87 (Pa. 2014) ("Where the words of a statute are not explicit, we employ principles of statutory construction.").

In this case, the Superior Court held that the language of section 7740.1(b) does not require the application of principles of statutory construction because it plainly provides that a court may authorize the modification of a noncharitable irrevocable trust instrument upon finding that said modification is not inconsistent with a material purpose of the trust. *Taylor*, 124 A.3d at 341. In our view, this was error. We must read all sections of a statute "together and in conjunction with each other," construing them "with reference to the entire statute." 1 Pa.C.S. § 1922(2); *Housing Auth. of the County of Chester v. Pa. State Civil Serv. Comm.*, 730 A.2d 935, 945 (Pa. 1999). When construing one section of a statute, courts must read that section not by itself, but with reference to, and in light of, the other sections. *Commonwealth v. Mayhue*, 639 A.2d 421, 439 (Pa. 1994). Statutory language must be read in context, "together and in conjunction" with the remaining statutory language. *Commonwealth v. Office of Open Records*, 103 A.3d 1276, 1284–85 (Pa. 2014) (citing *Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 4 A.3d 610, 622 (Pa. 2010)). Accordingly, in determining whether an ambiguity exists in the UTA requiring the application of principles of statutory construction, sections 7740.1 and 7766 must be construed and considered together.

Reading section 7740.1 in conjunction with section 7766, we conclude that ambiguities exist.[3] First, this Court has repeatedly held that there is an ambiguity when there are at least two reasonable interpretations of the relevant text. *See, e.g.*, *Warrantech Consumer v. Reliance Ins. Co.*, 96 A.3d 346, 354-55 (Pa. 2014) ("A statute is ambiguous when there are at least two reasonable interpretations of the text under review."); *Delaware Cty. v. First Union Corp.*, 992 A.2d 112, 118–19 (Pa. 2010); *Malt Beverages Distributors Ass'n v. Pennsylvania Liquor Control Bd.*, 974 A.2d 1144, 1153 (Pa. 2009); *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009); *Rendell v. Pa. State Ethics Comm'n*, 983 A.2d 708, 715 (Pa. 2009). Here, the Beneficiaries contend that section 7740.1 addresses modification of the trust agreement generally, providing beneficiaries with the flexibility to replace a trustee at some future date, while section 7766 directs a court's consideration of a specific request to remove and replace a trustee. Wells Fargo, conversely, asserts that section 7766 specifically addresses the removal and replacement of a trustee, setting forth the specific requirements for doing so, and that the legislature did not intend to permit beneficiaries to evade those requirements by resorting to the less onerous obligations for modification under section 7740.1. Because both interpretations plausibly give effect to the plain language of the

---

[3] We reject the Superior Court's contention that no ambiguities exist to permit the application of the rules of statutory construction because the Beneficiaries only sought to amend the Agreement of Trust to add a portability clause but did not request the immediate removal of Wells Fargo as the corporate trustee. *In re Taylor*, 124 A.3d at 341. Rather, we agree with Judge Platt's observation in his dissenting opinion in the Superior Court that this approach caused the panel majority to "ignore the obvious implications of its decision." *Id.* at 343 (Platt, J., dissenting). No reason exists for the Beneficiaries to seek modification to include a portability clause unless they contemplate (either immediately or at some future time) the removal of Wells Fargo as the corporate trustee.

two provisions, a latent ambiguity exists. *See Commonwealth v. Moran*, 104 A.3d 1136, 1146 (Pa. 2014) (principles of construction are implicated where neither party's arguments regarding interpretation of phrase in statute are so weak or implausible that statute can be called unambiguous) (citing *Commonwealth v. McCoy*, 962 A.2d 1160, 1167 (Pa. 2009) ("We do not think either party's argument is so weak or implausible that the statute can be called unambiguous in this context.")).

Moreover, the provisions are ambiguous because neither section contains any explicit language addressing the issue raised here. Unlike our General Assembly, two other states have, in enacting modified versions of the UTC, included express language providing that their general modification provisions may not be used to remove or replace a trustee, and that instead removal and replacement of a trustee by the beneficiaries must be accomplished pursuant to their more specific "removal of trustee" provision elsewhere in the statute. Iowa's general modification provision, for example, states that "removal of the trustee or the addition of a provision to the trust instrument allowing a beneficiary or a group of beneficiaries to remove the trustee or to appoint a new trustee shall not be allowed as a modification under this section." Iowa Code Ann. § 633A.2203. Instead, removal and replacement of a trustee must be effectuated pursuant to section § 633A.4107 of the Iowa Code ("Removal of trustee"). Similarly, Ohio's general modification provision states that a "noncharitable irrevocable trust may be modified, **but not to remove or replace the trustee**, upon consent of all of the beneficiaries if the court concludes that modification is not inconsistent with a material purpose of the trust." Ohio Rev. Code Ann. § 5804.11 (emphasis added). In Ohio, a trustee must be removed and replaced in accordance with the more rigorous

requirements of a separate provision entitled "Removal of trustee." Ohio Rev. Code Ann. § 5807.06.

We further note the lack of any explicit language in sections 7740.1 or 7766 with respect to whether section 7740.1's modification power extends to the modification of other statutory provisions of the UTA. In the trust at issue here, the settlor did not expressly provide the Beneficiaries with any power to remove the corporate trustee. As such, currently the corporate trustee of the Taylor Trust may be removed and replaced, if at all, only pursuant to section 7766, the statutory default provision for removal and replacement. As a result, a modification pursuant to section 7740.1 to add a portability provision would be, in effect, a modification of the requirements for removal and replacement of the trustee in section 7766. No language in the UTA indicates whether section 7740.1 may be utilized to modify statutorily imposed requirements (like those in section 7766).

For these reasons, we conclude that an ambiguity exists necessitating the application of the canons of statutory construction to ascertain the intent of the General Assembly. A fundamental principle in statutory construction is that we must read statutory sections harmoniously. *Office of Open Records*, 103 A.3d at 1284-85. Parts of a statute that are in pari materia, i.e., statutory sections that relate to the same persons or things or the same class of persons and things, are to be construed together, if possible, as one statute. 1 Pa.C.S. § 1932. "If they can be made to stand together[,] effect should be given to both as far as possible." *Office of Open Records*, 103 A.3d at 1284 (quoting *Kelly v. City of Philadelphia*, 115 A.2d 238, 245 (Pa. 1955)). In ascertaining legislative intent, statutory language is to be interpreted in context, with

every statutory section read "together and in conjunction" with the remaining statutory language, "and construed with reference to the entire statute" as a whole. *Board of Revision of Taxes, City of Philadelphia v. City of Philadelphia*, 4 A.3d 610, 622 (Pa. 2010). We must presume that in drafting the statute, the General Assembly intended the entire statute, including all of its provisions, to be effective. 1 Pa.C.S. § 1922. Importantly, this presumption requires that statutory sections are not to be construed in such a way that one section operates to nullify, exclude or cancel another, unless the statute expressly says so. *Cozzone ex rel. Cozzone v. W.C.A.B. (PA Municipal/East Goshen Twp.)*, 73 A.3d 526 (Pa. 2013); *Office of Open Records*, 103 A.3d at 1284-85.

Permitting beneficiaries to modify a trust agreement pursuant to section 7740.1 to add a portability clause would have precisely this effect, namely to "nullify, exclude or cancel" the effectiveness of section 7766. To obtain modification of the trust agreement under section 7740.1 to permit beneficiaries to remove and replace the trustee -- at any time thereafter (including on the day of approval of the modification), at their discretion, and without cause or judicial approval -- the beneficiaries need show only that modification would not be inconsistent with a material purpose of the trust.[4] 20 Pa.C.S. § 7740.1(b). In significant contrast, to remove and replace a trustee under section 7766, beneficiaries have to demonstrate, by clear and convincing evidence to the satisfaction of the Orphans' Court, that: (1) removal serves the best interests of the beneficiaries of the trust, (2) removal is not inconsistent with a material purpose of the trust, and (3) the beneficiaries have identified a suitable successor trustee. 20 Pa.C.S.

---

[4] Under subsection 7740.1(d), if less than all of the beneficiaries consent to the proposed modification, the court must also determine if the interests of the nonconsenting beneficiaries would be adequately protected. 20 Pa.C.S. § 7740.1(d).

§ 7766(b). In addition, beneficiaries also have to show that the current trustee (1) has committed a serious breach of trust, (2) has demonstrated a lack of cooperation among cotrustees substantially impairing the administration of the trust, (3) has not effectively administered the trust as a result of unfitness, unwillingness or persistent failures, or (4) there has been a substantial change of circumstances (not including a corporate reorganization). 20 Pa.C.S. § 7766(b)(1)-(4).

Beneficiaries seeking to remove and replace a trustee pursuant to section 7766 thus have substantial evidentiary hurdles to overcome, and the Orphans' Court must make numerous findings of fact and conclusions of law. As then-Judge, now Justice Wecht, has explained, under section 7766, a proposed removal of a trustee pursuant to section 7766 requires the Orphans' Court to consider many factors:

> We conclude that courts should consider the following factors when determining whether a current trustee or a proposed successor trustee best serves the interests of the beneficiaries: personalization of service; cost of administration; convenience to the beneficiaries; efficiency of service; personal knowledge of trusts' and beneficiaries' financial situations; location of trustee as it affects trust income tax; experience; qualifications; personal relationship with beneficiaries; settlor's intent as expressed in the trust document; and any other material circumstances.

*In re McKinney*, 67 A.3d at 833. The JSGC comments to section 7766 provide that its "grounds for removal assume an active inquiry and findings by the court." 20 Pa.C.S. § 7766, JSGC Comment - 2005.

Modification under section 7740.1 entails no similar detailed analysis, as that provision imposes no comparable evidentiary requirements. As a result, beneficiaries seeking to remove and replace a trustee can totally avoid section 7766, as they may accomplish the same end much more easily by modification under section 7740.1.

Under section 7740.1, beneficiaries can modify the trust agreement simply by demonstrating that a portability clause "is not inconsistent with a material purpose of the trust." 20 Pa.C.S. § 7740.1(b). While this showing is also one element of proof under section 7766, Wells Fargo correctly notes that even for this common element, the required proof is greater under section 7766 because the beneficiaries must demonstrate that the removal and replacement of a **specific** trustee would not be inconsistent with the trust's material purposes. Wells Fargo's Brief at 33 n.6. After an Orphans' Court approves a request for modification under section 7740.1, trustees may thereafter be removed and replaced at the subjective will of the beneficiaries, without any judicial oversight.

We do not rely upon the above analysis alone, however, as we recognize that there may be some ambiguity in terms of where the General Assembly sought to allow modification. Accordingly, we proceed to consider prior Pennsylvania law and the legislative history of section 7766. *See* 1 Pa.C.S. § 1921(c)(5), (7). Pennsylvania has a long history of strictly limiting the removal and replacement of a trustee to circumstances in which an Orphans' Court determines that good cause exists to do so. *See* 20 Pa.C.S. § 7121, *deleted by* Act of July 7, 2006, P.L. 625, No. 98, § 4; 20 P.S. §§ 921-933, *deleted by* Act of April 18, 1949, P.S. 512, art. IX, § 921.

> *In Re Crawford's Estate*, 340 Pa. 187, 190, 16 A.2d 521, 523 [(1940)], this Court said: 'While the removal of a trustee is a matter resting largely within the discretion of the court having jurisdiction over the trust, it is equally clear that an abuse of that discretion renders its exercise subject to review. As was said in [*In*] *Re Mathues's Estate*, 322 Pa. 358, 359, 185 A. 768 [(1936)]: 'The removal of a trustee is a drastic action, which should only be taken when the estate is actually endangered and intervention is necessary to save trust property.' *See, also, In re Barnes's Estate*, 339 Pa. 88, 96,

14 A.2d 274 [(1940)]. … A testator has, as a property right, the privilege and power to place the management of his estate in a selected person as a condition of his bounty'. *In re Mathues's Estate, supra*, 322 Pa. at page 359, 185 A. at page 769. … 'While inharmonious relations between trustee and cestui que trust, not altogether the fault of the former, will not generally be considered a sufficient cause for removal, yet where they have reached so acrimonious a condition as to make any personal intercourse impossible, and to hinder the proper transaction of business between the parties, a due regard for the interests of the estate and the rights of the cestui que trust may require a change of trustee.'

*In re Corr's Estate*, 58 A.2d 347, 350 (Pa. 1948).

The enactment of section 7766 reflects the General Assembly's intent to retain these principles in connection with the removal and replacement of a trustee. In section 7766, the General Assembly retained the requirement of judicial approval, and three of its four provisions still demand a showing of fault or negligence by the current trustee. 20 Pa.C.S. § 7766(b)(1)-(3). While section 7766 includes one no-fault provision permitting trustee replacement upon proof of a "substantial change in circumstances," even this subsection has been restricted in its application to preclude corporate reorganizations, mergers or consolidations from constituting such a substantial change.[5] 20 Pa.C.S. § 7766(b)(4).

The inclusion of a no-fault provision in section 7766 does not reflect any generalized legislative intent to permit beneficiaries to exercise control over the removal and replacement of trustees. In fact, the legislative history of section 7766 reflects to the contrary. Section 706(b)(4) of the UTC provides that a court may remove a trustee

---

[5] This restriction was added by section 7 of the Act of October 27, 2010, P.L. 837 (amending 20 Pa.C.S. § 7766(b)(4)).

upon the unanimous agreement of all of the trust beneficiaries, so long as the action best serves the interests of all the beneficiaries, is not inconsistent with a material purpose of the trust, and a suitable co-trustee or successor trustee is available. Early draft versions of section 7766 of the UTA included this provision as section 7766(b)(5). The JSGC recommended the General Assembly enact it, indicating that it would permit the beneficiaries of a trust to remove a trustee "whether or not the trustee is at fault." JSGC 2003 Report at 87. The General Assembly, however, refused to do so, as the JSGC comment to section 7766 reports that the "Senate Judiciary Committee voted to remove paragraph (5)," and that, as a result, "[t]his version of § 7766 does not include paragraph (5)." 20 Pa.C.S. § 7766, JSGC Comment - 2005.

Finally, any remaining doubt as to whether the power to modify trust terms under section 7740.1 may be used to bypass the more onerous requirements for trustee removal in section 7766 is resolved by reference to the Uniform Law Comment to section 7740.1, which addresses the specific issue raised in this appeal. Section 1939 of the Statutory Construction Act provides as follows:

> The comments or report of the commission, committee, association or other entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly, but the text of the statute shall control in the event of conflict between its text and such comments or report.

1 Pa.C.S. § 1939.[6]  The prefatory comment to the UTA states that the sections of the UTA that are substantially similar to their UTC counterparts are indicated by a reference to the UTC section number in the UTA section headings, and that the UTC comments for these designated provisions "are applicable to the extent of the similarity."  JSGC Prefatory Comment to UTA.  The heading for section 7740.1 contains a reference to the corresponding UTC section number (UTC 411), and we may thus consider the UTC's Uniform Law Comment as evidence of the General Assembly's intent with respect to the proper application and scope of section 7740.1.  *See Moran*, 104 A.3d at 1145 ("In construing or applying a statute's language, we may consult official comments that were published or generally available to the legislature prior to the statute's enactment, to the extent such comments are consistent with the statute's text.") (citing 1 Pa.C.S. § 1939).[7]

The UTC comment to section 7740.1 provides, in relevant part:

> Subsection (b), similar to Restatement Third but not Restatement Second, allows modification by beneficiary action.  The beneficiaries may modify any term of the trust if the modification is not inconsistent with a material purpose of the trust.  Restatement Third, though, goes further than this Code in also allowing the beneficiaries to use trust modification as a basis for removing the trustee if removal

---

[6]  Wells Fargo contends that section 1939 of the Statutory Construction Act applies without regard to whether any ambiguity exists in the statutory language at issue.  Wells Fargo's Brief at 20.  While it is true that section 1939, unlike section 1921, contains no reference to the need for an ambiguity before it may be utilized, it is also true that if the relevant statutory language is free of ambiguity, resort to section 1939 would be unnecessary.  As we have concluded that the statutory provisions at issue here contain latent ambiguities, however, we need not rule definitively on this contention in this appeal.

[7]  JSGC and UTC comments were published and provided to the General Assembly prior to the UTA's enactment.  *See* JSGC, 2005 Report at 1-2; 2006 PA. LEG. J. (HOUSE) 1744, 1746 (June 29, 2006) (noting that JSGC's report was presented to the General Assembly and subject to hearings).

would not be inconsistent with a material purpose of the trust. **Under the Code, however, Section 706 is the exclusive provision on removal of trustees.** Section 706(b)(4) recognizes that a request for removal upon unanimous agreement of the qualified beneficiaries is a factor for the court to consider, but before removing the trustee the court must also find that such action best serves the interests of all the beneficiaries, that removal is not inconsistent with a material purpose of the trust, and that a suitable cotrustee or successor trustee is available.

20 Pa.C.S. § 7740.1, Uniform Law Comment (emphasis added).

As this comment reflects, section 65 of the American Law Institute's Restatement (Third) of Trusts permits the beneficiaries of a trust to use section 65's modification power to amend a trust agreement to provide for the removal of a trustee.[8] As the above bolded portion of the comment plainly provides, however, section 411 of the UTC (section 7740.1 of the UTA) is **not** intended to be as broad as its Restatement (Third) counterpart, and that instead section 706 of the UTC (section 7766 of the UTA) is the "**exclusive provision on removal of trustees**". By enacting section 7740.1 of the UTA in light of this comment, the legislative intent with respect to the interplay between sections 7740.1 and 7766 is clear -- the scope of permissible amendments under section 7740.1 does not extend to modifications to add a portability clause permitting beneficiaries to remove and replace a trustee at their discretion; instead, removal and replacement of a trustee is to be governed exclusively by section 7766.

---

[8] Section 65 of the Restatement (Third) of Trusts is entitled "Termination or Modification by Consent of Beneficiaries." Restatement (Third) of Trusts § 65 (2003). Comment f thereto cites with approval Connecticut Gen. Stat. § 45a-242 (as amended 2001) for the proposition that a court may remove a trustee if "requested by all of the beneficiaries" and the court finds that removal "best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose" of the trust and also that "a suitable cofiduciary or successor fiduciary is available." Restatement (Third) of Trusts § 65 cmt. f (2003).

The Beneficiaries argue that the UTC comment's "exclusivity" language is inapplicable to Pennsylvania's UTA provisions. Beneficiaries' Brief at 29. The Beneficiaries direct us to the text of the comment after the bolded language, contending that the statement relating to exclusivity is "tied to" UTC section 706(b)(4), which, as noted above, provides that a court may remove a trustee in certain circumstances with the unanimous consent of all of the beneficiaries. *See* 20 Pa.C.S. § 7766, JSGC Comment - 2005 (reporting that the Senate Judiciary Committee voted to remove proposed subsection 7766(b)(5) prior to the enactment of the UTA). According to the Beneficiaries, proposed subsection 7766(b)(5) (section 706(b)(4) of the UTC) was a "specific but more limited application of 411 under the UTC," and that "as envisioned under the UTC," UTC section 706(b)(4) would have "similarly allow[ed]" the beneficiaries "to request removal if the designation of **that particular trustee** was not a material purpose of the trust." Beneficiaries' Brief at 29 (emphasis in original) (citing 20 Pa. C.S. § 7766, Uniform Law Comment). Because proposed subsection 7766(b)(5) was not adopted by the General Assembly, the Beneficiaries insist that the "more limited application of section 7740.1" was rejected, rendering the "exclusivity" language inapplicable in Pennsylvania.

We do not agree with the Beneficiaries' construction of the UTC comment. The bolded language regarding exclusivity was intended to distinguish the scope of the Restatement (Third)'s modification powers with those of the UTC, conveying that while beneficiaries may amend a trust agreement under the Restatement (Third)'s modification provision to add a portability provision, the scope of section 411 of the UTC (section 7740.1 of the UTA) cannot be so broadly construed. Moreover, we agree with

Wells Fargo that the General Assembly's rejection of proposed subsection 7766(b)(5) did not expand, but rather limited, the ability of beneficiaries to remove a trustee under the UTA. Wells Fargo's Brief at 28. As the Beneficiaries interpret the UTC comment, however, this restriction on beneficiaries' power under section 7766 was actually intended by the General Assembly to increase the beneficiaries' corresponding power to remove and replace a trustee under section 7740.1. As discussed herein, in keeping with long-standing Pennsylvania law in this area, we construe the General Assembly's rejection of proposed subsection 7766(b)(5) as reflecting only a legislative decision to deny the inclusion of a second no-fault provision to section 7766.

For these reasons, we conclude that the scope of section 7740.1 of the UTA does not extend to modification of trust agreements to permit the removal and replacement of trustees. Instead, as the UTC comment to section 7740.1 reflects, section 7766 of the UTA is the "exclusive provision regarding removal of trustees." Accordingly, the decision of the Superior Court to the contrary is hereby reversed.

Chief Justice Saylor and Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.