2023 PA Super 151

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALTER R. GARRISON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MARK R. GARRISON, CHRISTOPHER GARRISON, LINDSEY GARRISON, LIZA GARRISON, AND BRITTANY GARRISON | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1429 EDA 2020 |

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 1992-X1519

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALTER R. GARRISON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MARK R. GARRISON, CHRISTOPHER GARRISON, LINDSEY GARRISON, LIZA GARRISON, AND BRITTANY GARRISON | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1430 EDA 2020 |

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 1992-X1518

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALTER R. GARRISON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: MARK R. GARRISON, CHRISTOPHER GARRISON, LINDSEY GARRISON, LIZA GARRISON, AND BRITTANY GARRISON | : | |
| | : | |
| | : | |
| | : | No. 1431 EDA 2020 |

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s): No. 1992-X1509

| | | |
|---|---|---|
| TRUST UNDER DEED OF WALTER R. GARRISON | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

:
:
:
APPEAL OF: BARTON J. WINOKUR,                   :
EXECUTOR OF THE ESTATE OF                       :
WALTER R. GARRISON, DECEASED                    :
:
:                   No. 1461 EDA 2020

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 1992-X1509,
No. 1992-X1518, No. 1992-X1519

TRUST UNDER DEED OF WALTER R.      :      IN THE SUPERIOR COURT OF
GARRISON                           :            PENNSYLVANIA
:
:
APPEAL OF: BARTON J. WINOKUR,      :
EXECUTOR OF THE ESTATE OF          :
WALTER R. GARRISON, DECEASED       :
:
:                   No. 1498 EDA 2020

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 1992-X1509,
No. 1992-X1518, No. 1992-X1519

TRUST UNDER DEED OF WALTER R.      :      IN THE SUPERIOR COURT OF
GARRISON                           :            PENNSYLVANIA
:
:
APPEAL OF: BARTON J. WINOKUR,      :
EXECUTOR OF THE ESTATE OF          :
WALTER R. GARRISON, DECEASED       :
:
:                   No. 1562 EDA 2020

Appeal from the Order Entered June 16, 2020
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 1992-X1509,
No. 1992-X1518, No. 1992-X1519

J-A13008-21

BEFORE: BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY BENDER, P.J.E.: **FILED AUGUST 8, 2023**

This case is on remand from the Pennsylvania Supreme Court after it reversed this Court's September 27, 2021 memorandum decision,[1] in which we had affirmed the orphans' court's extension of the holding in ***Trust under Agreement of Edward Winslow Taylor***, 164 A.3d 1147 (Pa. 2017), to the instant matter and thereby upheld the orphans' court's determination that certain trust modification agreements entered into by the settlor of the underlying trusts, as well as all of the trusts' beneficiaries, were invalid.[2] Our Supreme Court remanded the case to this Court for consideration of issues properly preserved but not reached in rendering our prior determination. Now, on remand, we affirm in part, vacate in part, and remand for further proceedings consistent with this memorandum.

At issue in this case are three irrevocable trusts created by Walter R. Garrison ("Walter" or "Settlor"), naming Walter's son, Mark R. Garrison ("Mark" or "Petitioner") and Mark's children, Christopher Garrison, Lindsey Garrison, Liza Garrison, and Brittany Garrison (collectively "Mark's Children"),

---

[*] Former Justice specially assigned to the Superior Court.

[1] ***Trust Under Deed of Walter R. Garrison*** ("***Garrison I***"), 2021 WL 4432611 (Pa. Super. Sept. 27, 2021) (unpublished memorandum).

[2] ***See In re Trust Under Deed of Walter R. Garrison*** ("***Garrison II***"), 288 A.3d 866 (Pa. 2023).

- 3 -

as the beneficiaries.[3, 4]  Under the terms of the Trusts, an individual trustee appointed by Settlor had the power to designate in writing an individual successor for himself in the event of Settlor's death.  On August 18, 2017, Settlor and Beneficiaries entered into agreements ("Modification Agreements") to modify the terms of the Trusts regarding the removal and replacement of trustees.  Pursuant to the Modification Agreements, following Settlor's death, a majority of the Beneficiaries "may at any time remove, with or without cause," any individual trustee and may appoint another trustee in his or her place.  Orphans' Court Order and Opinion ("OCOO"), 6/16/20, at 4 (citations omitted).

Settlor passed away on February 24, 2019.  Following his death, Beneficiaries acted under the Modification Agreements to remove the existing independent co-trustees, Lawrence C. Karlson, Donald W. Garrison, and Michael J. Emmi (collectively "Independent Trustees"), and to appoint Dr. Mairi Leining, Christina Zavell, and Michael Zavell (collectively "Successor Trustees") in their place, effective April 27, 2019.  When notified of Beneficiaries' action, the Independent Trustees indicated that they did not recognize the Modification Agreements as valid, nor did they believe that their purported removal thereunder was valid.

---

[3] The three trusts are collectively referred to herein as the "Trusts."

[4] Mark and his Children are collectively referred to herein as "Appellants" or "Beneficiaries."

- 4 -

On July 19, 2019, seeking to uphold the Independent Trustees' replacements, Mark filed a petition for declaratory judgment to determine the validity of the Modification Agreements and to confirm the appointment of Successor Trustees. Petition for Declaratory Judgment, 7/19/19, at 1-17 (unnumbered).[5] Barton J. Winokur, the executor of Settlor's estate ("Executor"), and Independent Trustees filed separate answers and new matter, in which they raised the following affirmative defenses: 1) the Modification Agreements are invalid under **Taylor**, **supra**; 2) the Modification Agreements are invalid for failure to meet the adequate representation requirements of 20 Pa.C.S. §§ 7723 and 7725; and 3) Walter was unduly influenced into signing the Modification Agreements by two of his children, Mark and Susan. **See** Executor's Answer in Opposition to Petition for Declaratory Judgment, 9/6/19, at 22-23; Independent Trustees' Answer and New Matter to Petition for Declaratory Judgment, 9/6/19, at 12-13.

Subsequently, Mark moved for judgment on the pleadings, asserting that he is entitled to judgment as a matter of law, that the Modification Agreements are enforceable, and that under the terms of the modifications,

_____

[5] On September 5, 2019, Mark's Children, as beneficiaries of the Trusts, as well as Walter's other four children, Jeffrey Garrison, Susan Garrison, Pam Phelan, and Heather Garrison, as contingent remainder beneficiaries of the Trusts, joined Mark's petition for declaratory judgment, pursuant to section 7540(A) of the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541. **See** 42 Pa.C.S. § 7540(A) ("When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration and no declaration shall prejudice the rights of persons not parties to the proceeding.").

Successor Trustees should be confirmed. Motion for Judgment on Pleadings, 11/8/19, at 1-11 (unnumbered). Executor filed a responsive pleading averring that "fundamental disputed issues of fact preclude entry of judgment on the pleadings in Mark's favor." Executor's Answer in Opposition to Motion for Judgment on Pleadings, 11/8/19, at 4. He also repeated his claim that Walter was unduly influenced into signing the Modification Agreements. *Id.* at 5, 7-15. *See also* Independent Trustees' Answer to Motion for Judgment on Pleadings, 11/27/19, at 1-2 (incorporating their answers from their Answer and New Matter to Petition for Declaratory Judgment).

The orphans' court determined that both the petition for declaratory judgment and the motion for judgment on the pleadings turned on the narrow issue of whether the Pennsylvania Supreme Court's holding in *Taylor* applies with respect to a purported modification of a trust made with the consent of the settlor as well as the beneficiaries, pursuant to 20 Pa.C.S. § 7740.1(a). *See* OCOO at 2-3.[6] After consideration of the parties' pleadings and supplemental briefing on the *Taylor* issue, the orphans' court issued an order dated June 16, 2020, which denied Appellants' petition for a declaratory judgment and motion for judgment on the pleadings. *Id.* at 15. The order

---

[6] "In *Taylor*, beneficiaries of an irrevocable trust sought permission from the orphans' court, pursuant to section 7740.1(b) of the [Pennsylvania] Uniform Trust Act [("UTA"), 20 Pa.C.S. §§ 7701-7799.3,] to modify the terms of the trust to include the ability of the beneficiaries to replace trustees, in what is commonly referred to as a portability provision. The settlor of the trust was at that time deceased." *Garrison II* at 869 (citing *Taylor*, 164 A.3d at 636-37).

specifically declared that "the Modification Agreements are ineffective and invalid[] to the extent that they purport to grant … [B]eneficiaries the power to remove and replace … Independent Trustees[,]" that "[t]he removal of … Independent Trustees pursuant to the [Modification Agreements] is invalid, and the appointment of … [S]uccessor [Trustees] is a nullity." **Id.** The order further stated that Independent Trustees "remain as co-trustees of the [T]rusts for which each of them is a named trustee and may be removed and replaced pursuant only to the original terms of the Trusts or to proceedings in accordance with the requirements of 20 Pa.C.S. § 7766." **Id.** Additionally, the court concluded that "the Estate of Walter R. Garrison, deceased, does not have an ongoing interest in the Trusts and[,] therefore[,] the estate is not a proper participant to these proceedings." **Id.** at 3.

On July 14, 2020, Appellants filed timely notices of appeal, followed by timely, court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal.[7]  On July 27, 2020, Executor filed timely notices of cross-appeal, pursuant to Pa.R.A.P. 903(b), and he complied with the orphans' court's Rule 1925(b) order.[8]

_____

[7] As we noted in **Garrison I**, the June 16, 2020 order is appealable pursuant to Pa.R.A.P. 342(a), which provides that an appeal may be taken as of right from an orphans' court order "determining the validity of a will or trust[,]" or "determining the status of fiduciaries, beneficiaries, or creditors in an estate, trust, or guardianship."  Pa.R.A.P. 342(a)(2), (5).

[8] On September 23, 2020, this Court consolidated sua sponte the appeals and cross-appeals at Nos. 1429, 1430, 1431, 1461, 1498, and 1562 EDA 2020. **See** Per Curiam Order, 9/23/20 (single page).

On appeal, Appellants raised the following issues for our review:

1. Did the orphans' court err by not enforcing modifications to [the T]rusts under 20 Pa.C.S.[] § 7740.1(a), which were agreed to by … [S]ettlor and [B]eneficiaries to allow for the replacement of [Independent T]rustees by a majority of [B]eneficiaries after the death of … [S]ettlor?

2. Were Appellants entitled to judgment on the pleadings on the claim that their agreements to modify [the T]rusts were the product of undue influence where the facts alleged do not state any action upon which relief could be granted?

Appellants' Brief at 6 (unnecessary capitalization omitted).

Additionally, Executor presented the following issues for our consideration in his cross-appeal:

1. Does the orphans' court's clear and accepted error in *sua sponte* raising the issue of the Estate's standing require reversal, where the court recognized the disputed questions of material fact proffered by the Estate for which, absent reversal and should this case continue, the Estate will be precluded from presenting supporting evidence?

2. Does the orphans' court's express recognition of disputed questions of material fact concerning whether any agreement to the purported Trust modifications was obtained as a result of undue influence serve as an alternate basis to deny Appellants' motion for judgment on the pleadings?

Executor's Brief at 5 (unnecessary capitalization omitted).

At the crux of Appellants' claim that the orphans' court erred in failing to enforce the Modification Agreements was the interpretation and application of sections 7740.1(a) and 7766 of the UTA.[9]  The **Taylor** Court considered

_____

[9] Section 7740.1 governs the modification of noncharitable, irrevocable trusts by consent.  **See** 20 Pa.C.S. § 7740.1(a) (allowing for modification upon
*(Footnote Continued Next Page)*

- 8 -

Pennsylvania's "long history of strictly limiting the removal and replacement of a trustee to circumstances in which an [o]rphans' [c]ourt determines that good cause exists to do so[,]" *Taylor*, 164 A.3d at 1158 (citations omitted), and it concluded that "the legislative intent with respect to the interplay between sections 7740.1 and 7766 is clear — the scope of permissible amendments under section 7740.1 does not extend to modifications … permitting beneficiaries to remove and replace a trustee at their discretion; instead, removal and replacement of a trustee is to be governed exclusively by section 7766." *Id.* at 1160-61.

The orphans' court extended the holding in *Taylor* to the instant matter and opined:

> In light of the Supreme Court's opinion in *Taylor*, we are constrained to hold that if the trust modification allows for removal and replacement of a trustee, it is governed by [section] 7766…. The *Taylor* Court made no exception to allow modifications of trusts for removal of trustees made with the consent of a settlor and beneficiaries. Following the legislature's intent, the Court held that UTA [section] 7766 is the exclusive provision for removal of trustees and, therefore, an end run on the stringent requirements of [section] 7766 could not be made by using a different UTA provision governing modification by consent to add a portability clause to a trust. As such, … Independent Trustees of the Garrison Trusts may be removed and replaced only pursuant to [section] 7766, the statutory default provision for removal and replacement of trustees.

_____

consent of the settlor and all beneficiaries even if the modification is inconsistent with the material purpose of the trust). Section 7766 governs the removal of a trustee. *See* 20 Pa.C.S. § 7766(a) (requiring court approval for the removal of a trustee at the request of a settlor, co-trustee, or a beneficiary); 20 Pa.C.S. § 7766(b) (outlining the circumstances under which the court may approve removal of a trustee).

OCOO at 11-12. The orphans' court concluded that its foregoing legal analysis was sufficient to uphold its denial of Appellants' petition for declaratory judgment and motion for judgment on the pleadings. We affirmed.[10]

Our Supreme Court granted Appellants' petition for *allocator* to review "the lower courts' extension of [its] holding in … *Taylor* … to a unified action of beneficiaries and settlor of a trust under section 7740.1(a)." *Garrison II* at 868. Emphasizing that the settlor in *Taylor* was deceased at the time the modification of the trust was sought, thus, the interests of the settlor in that case were not represented, our Supreme Court determined that the lower courts' extension of *Taylor* to the instant matter which involves a unified action by Settlor and Beneficiaries to modify the Trusts under section 7740.1(a) was improper. *Id.* at 871-74. The Court reversed our decision and remanded for our consideration of any legal or factual issues that were properly preserved but not reached in rendering our prior determination. *Id.* at 874.

We begin our analysis of the parties' claims by noting our standard and scope of review:

> As our Supreme Court has explained, appellate review of a trial court's decision to grant or deny judgment on the pleadings is limited to determining whether the trial court committed an error of law or whether there were facts presented which warrant a jury trial. In conducting this review, we look only to the pleadings and any documents properly attached thereto. Judgment on the

---

[10] Due to our disposition, we did not reach the merits of the issues raised by Appellants and Executor regarding whether the Modification Agreements were the product of undue influence. *See Garrison I* at *11.

pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.

***John T. Gallaher Timber Transfer v. Hamilton***, 932 A.2d 963, 967 (Pa. Super. 2007) (citation omitted).

Instantly, at the core of the parties' claims is the validity of the Modification Agreements. Considering our Supreme Court's ruling that the extension of ***Taylor*** to this matter was improper, the orphans' court erred in deeming the Modification Agreements invalid based on ***Taylor*** and, thus, we cannot uphold its denial of the petition for declaratory judgment and motion for judgment on the pleadings on that basis. Nevertheless, we consider Executor's assertion that the Modification Agreements are the product of undue influence and whether there are questions of material fact which would serve as an alternate basis to deny Appellants' motion for judgment on the pleadings.[11] ***See*** 20 Pa.C.S. § 7736 ("A trust or an amendment to a trust is

_____

[11] While the orphans' court did not deny judgment on the pleadings on the grounds of undue influence and/or the existence of disputed, material facts, we may affirm a lower court's decision if there is a proper basis for the result reached, even if it is different than the basis relied upon by the trial court. ***See Grabowski v. Carelink Cmty. Support Servs., Inc.***, 230 A.3d 465, 472 n.3 (Pa. Super. 2020) (citing ***Generation Mortgage Co. v. Nguyen***, 138 A.3d 646, 651 n.4 (Pa. Super. 2016); ***In re Estate of Rood***, 121 A.3d 1104, 1105 n.1 (Pa. Super. 2015)). ***See also*** OCOO at 14 (acknowledging "[t]here remain disputed questions of material fact concerning whether … Settlor's agreement to the purported modifications was obtained as a result of undue influence … that would … preclude granting … Petitioner's motion for judgment on the pleadings with respect to [his] petition for declaratory judgment[,]" but concluding that these questions "need not and cannot be decided at this juncture[,]" in light of the orphans' court's holding that the Modification Agreements are invalid).

voidable to the extent its creation was induced by fraud, duress[,] or undue influence.").

Executor argues that his pleadings contain factual averments sufficient to establish undue influence or, at the very least, genuine issues of material fact, which preclude the entry of judgment on the pleadings in Mark's favor. Executor's Brief at 18 (citing **Keil v. Good**, 356 A.2d 768 (Pa. 1976) (stating "the court is required to consider not only the pleadings, but also the reasonable inferences therefrom, in the light most favorable to the party opposing the motion"); **Parish v. Horn**, 768 A.2d 1214 (Pa. Cmwlth. 2001), *aff'd* 800 A.2d 294 (Pa. 2002) (declaring that judgment on the pleadings is proper only when no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law)).

Conversely, with respect to Executor's affirmative defense of undue influence, Appellants insist that they are entitled to judgment on the pleadings, as Executor failed to allege sufficient facts upon which relief could be granted. Appellants' Brief at 35. In support of their claim, they aver that undue influence "is a species of fraud, which must be pled with particularity." **Id.** at 37 (citing Pa.R.Civ.P. 1019). In order to plead an action for undue influence, Appellants maintain "a party must allege facts that if proven would establish three elements: (1) the settlor suffered from a weakened intellect, and that (2) he had a confidential relationship with (3) an individual receiving a substantial benefit under the terms of the trusts." **Id.** at 37-38 (citing **In re Estate of Luongo**, 823 A.2d 942, 963 (Pa. Super. 2003)). They conclude

- 12 -

that Executor failed to set forth sufficient, well-pled factual averments to establish any of these three elements and, thus, Appellants are entitled to judgment on the pleadings. **Id.** at 38.

First, after conducting an extensive review of relevant caselaw, we conclude that Appellants erroneously attempt to hold Executor to the three-part standard set forth in **Luongo** in support of their argument that he failed to set forth a cause of action for undue influence. Unlike the present matter, **Luongo** sets forth the burden of proof for establishing undue influence in the context of a will contest.[12] Whereas in decisions concerning whether a party was unduly influenced into entering a contract outside the context of a will contest, the courts have generally not applied this standard and instead have focused only on the issue of whether a confidential relationship existed.[13] **See**

---

[12] In considering whether the appellant set forth a *prima facie* case for undue influence in an action contesting the validity of his father's will in probate, the **Luongo** Court explained that "[a] presumption of validity arises once a will is probated, and the burden shifts to the contestant [of the will] to prove undue influence." **Luongo**, 823 A.2d at 963 (citations omitted).

> To meet this burden, the contestant must establish by clear and convincing evidence that: (1) the testator was of weakened intellect at the time the will was executed; (2) the proponent of the will stood in a confidential relationship with the testator; and (3) the proponent received substantial benefit under the will.

**Id.**

[13] "While the two terms [confidential relationship and undue influence] are sometimes used interchangeably, the latter is used mostly in will contests, and the former is employed most often in contract disputes." **Biddle v. Johnsonbaugh**, 664 A.2d 159, 162 n.1 (Pa. Super. 1995).

- 13 -

*Yenchi v. Ameriprise Financial, Inc.*, 161 A.3d 811 (Pa. 2017) (focusing only on whether a fiduciary duty or confidential relationship existed in the context of a consumer transaction to purchase a life insurance policy); *Frowen v. Blank*, 425 A.2d 412 (Pa. 1981) (considering only whether a confidential relationship existed in connection with the execution of an agreement for the sale of real estate). *See also In re Balogh*, 2021 WL 3206111, at *4 (Pa. Super. July 29, 2021) (unpublished memorandum) (concluding that the orphans' court erroneously applied the more stringent, three-part undue influence standard for testamentary transfers to a matter involving an *inter vivos* transfer).[14]

The matter before us involves a dispute over agreements to modify *inter vivos* trusts.[15] As we explained in *Balogh*, a challenge to a transfer made during an individual's lifetime is subject to a different standard than that of a testamentary transfer. *Id.* The challenger of an *inter vivos* transfer need only establish a single thing: that the donor and donee were in a confidential relationship. *Id.* "If the challenger carries that burden, the burden then shifts to the donee to 'prove affirmatively that it is unaffected by any taint of undue influence, imposition, or deception.'" *Id.* (quoting *McCown v. Fraser*, 192

---

[14] *See* Pa.R.A.P. 126(b) (unpublished, non-precedential decisions of the Superior Court, filed after May 1, 2019, may be cited for their persuasive value).

[15] An *inter vivos* trust is defined as "an express trust other than a trust created by a will, taking effect during the lifetime or at or after the death of the settlor." 20 Pa.C.S. § 711(3).

A. 674, 676 (Pa. 1937) (footnote omitted)). **See also Frowen**, 425 A.2d at 416 ("Where a confidential relationship exists, the law presumes the transaction voidable, unless the party seeking to sustain the validity of the transaction affirmatively demonstrates that it was fair under all of the circumstances and beyond the reach of suspicion.") (citation omitted).

Moreover, we determined that

[a] challenger to an *inter vivos* gift claiming undue influence bears no burden of showing that the donor had a weakened intellect. Rather, an *inter vivos* gift to one in a confidential relationship with the donee "will be condemned, even in the absence of evidence of actual fraud, or of mental incapacity on the part of the donor, unless there is full and satisfactory proof that it was the free and intelligent act of the donor, fully explained to him, and done with a knowledge of its consequence."

**Balogh**, 2021 WL 3206111, at *4 (quoting **McCown**, 192 A. at 676-77) (emphasis omitted).

Thus, the crucial question here is whether Executor alleged sufficient facts to establish that a confidential relationship existed between Walter and either Mark or Susan. The existence of a confidential relationship is dependent upon the facts of each particular case. **See Yenchi**, 161 A.3d at 817; **In re Estate of Scott**, 316 A.2d 883, 885 (Pa. 1974) ("The concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line. The essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other.") (internal citation omitted).

- 15 -

As explained by our Supreme Court,

[a] fiduciary duty[16] is the highest duty implied by law. A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information…. In some types of relationships, a fiduciary duty exists as a matter of law. Principal and agent, trustee and *cestui que* trust, attorney and client, guardian and ward, and partners are recognized examples. The unique degree of trust and confidence involved in these relationships typically allows for one party to gain easy access to the property or other valuable resources of the other, thus necessitating appropriate legal protections.

Where no fiduciary duty exists as a matter of law, Pennsylvania courts have nevertheless long recognized the existence of confidential relationships in circumstances where equity compels that we do so. Our courts have found fiduciary duties in circumstances where the relative position of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other. The circumstances in which confidential relationships have been recognized are fact specific and cannot be reduced to a particular set of facts or circumstances. We have explained that a confidential relationship "appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or on the other, weakness, dependence or trust, justifiably reposed[.]" *Frowen*[,] … 425 A.2d [at] 416-17…. In these cases, which have typically been brought in courts of equity, if a confidential relationship was found to exist, then the burden shifts and the fiduciary has to demonstrate that there has been no breach of trust. *Id.* Transactions between persons occupying a confidential relationship are voidable, and the party seeking to benefit from such a transaction must demonstrate that his or her actions were at all times "fair, conscientious, and beyond the reach of suspicion." *Young*[ *v. Kaye*], 279 A.2d [759,] 766[ (Pa. 1971)]; *Matter of Estate of Evasew*, … 584 A.2d 910, 913 ([Pa. ]1990).

_____

[16] The Court uses the terms "fiduciary relationship" and "confidential relationship" interchangeably. *See Yenchi*, 161 A.3d at 817 n.5 (citing *Stewart v. Hooks*, 94 A.2d 756, 759 (Pa. 1953)).

*Yenchi*, 161 A.3d at 819-21 (some citations omitted).

Moreover, our Supreme Court has recognized that,

[w]hile disease or advancing age "do not by themselves create a confidential relationship with another," such limitations "may support an inference of confidentiality" if they bear on a party's "capacity to understand the nature of the transaction in question." *Scott*, 316 A.2d at 886. Family relationships or close personal friendships, while also not dispositive of the existence of a confidential relationship, have also often played significant roles in particular determinations. *Silver v. Silver*, … 219 A.2d 659, 662 ([Pa. ]1966) (stating that kinship, while not dispositive, is a factor "which cannot be ignored").

Where one party lacks the ability to understand the nature and terms of the transaction and simultaneously reposes their complete trust in the other party based upon well-established relationships, this circumstance provides an opportunity for the second party to exercise undue influence over the first and, thus, effectively control the decision-making process to their advantage…. Undue influence resulting in a loss of control has also been found to exist when one party places their complete and unhesitating trust in the other party, and in so doing effectively cedes their decision-making authority to the other party…. Conversely, even where special vulnerabilities exist, this Court has not recognized the existence of a confidential relationship if the person continued to act on his or her own behalf and did not succumb to any "overmastering influence" of another.

*Id.* at 821-22.

Our analysis of the pleadings is further governed by Pennsylvania Orphans' Court Rule 3.3, which provides, in relevant part:

(b) The material facts on which a cause of action or defense is based shall be stated in a concise and summary form.

(c) Averments of fraud or mistake shall be averred with particularity. Malice, intent, knowledge, and other conditions of mind may be averred generally.

Pa.R.O.C.P. 3.3(b), (c).[17]

While Appellant contends that undue influence "is a species of fraud, which must be pled with particularity[,]" Appellant's Brief at 37, we reject this argument.  This Court has previously acknowledged that undue influence is "a similar yet distinct legal theory" from fraud.  **See In re Passarelli Family Trust**, 206 A.3d 1188, 1194 n.6 (Pa. Super. 2019) (*en banc*) (involving an appeal from the granting of a petition to terminate an irrevocable trust on the basis of fraudulent inducement).[18]  **See also In re Estate of Glover**, 669 A.2d 1011, 1016 (Pa. Super. 1996) ("Although undue influence is very much like fraud, the two are not identical.") (quoting 31 Standard Pennsylvania Procedure 2d § 148:60).

Additionally, the UTA notes that Section 7736 (regarding the voidability of a trust or an amendment to a trust subject to fraud, duress, or undue influence) is a specific application of the Restatement (Second) and (Third) of Trusts and closely tracks the language of the Restatement (Third) of Property: Wills and Other Donative Transfers Section 8.3.  **See** 20 Pa.C.S. § 7736,

---

[17] Rule 3.3 is derived from Pa.R.Civ.P. 1019.

[18] We opined:

> Theoretically, fraud is separate and distinct from undue influence, since, when the former is exercised the testator acts as a free agent but is deceived into acting by false data, and when the latter is exercised the mind of the testator is so overmastered that another will is substituted for his own.

**Id.** (citation omitted).

Comment. **See also** Rest. 3d Property § 8.3(a) ("A donative transfer is invalid to the extent that it was procured by undue influence, duress, or fraud."); Rest. 3d Property § 8.3, Comment a. (noting this section applies to all donative transfers, whether *inter vivos* or testamentary; references in this section to the term "donative transfer" include amendments of a donative transfer); Rest. 3d Trusts § 12, Comment b. (incorporating the definitions of undue influence and fraud, as set forth in the Restatement (Second) of Property (Donative Transfers) § 34.7). Hence, we look to the Restatement (Second) and (Third) of Property for guidance regarding the distinction between undue influence and fraud.

The Restatement (Third) of Property distinguishes between undue influence and fraud as follows:

> (b) A donative transfer is procured by undue influence if the wrongdoer exerted such influence over the donor that it overcame the donor's free will and caused the donor to make a donative transfer that the donor would not otherwise have made.
>
> …
>
> (d) A donative transfer is procured by fraud if the wrongdoer knowingly or recklessly made a false representation to the donor about a material fact that was intended to and did lead the donor to make a donative transfer that the donor would not otherwise have made.

Rest. 3d Property § 8.3(b), (d). "The doctrine of undue influence protects against overreaching by a wrongdoer seeking to take unfair advantage of a donor who is susceptible to such wrongdoing on account of the donor's age, inexperience, dependence, physical or mental weakness, or other factor." **Id.**, Comment e.

In the case *sub judice*, we observe that Executor does not expressly allege fraud on the part of Mark and/or Susan. Rather, he alleges that Mark and Susan **unduly influenced** Walter into signing the Modification Agreements. We have determined that fraud **may** be part of a scheme to improperly influence an individual, but it is not the only means by which a defendant may exercise undue influence. **Kern v. Kern**, 892 A.2d 1, 8 (Pa. Super. 2005). **See also id.** (defining undue influence as "conduct including 'imprisonment of the body or mind, fraud, or threats, or misrepresentations, or circumvention, or inordinate flattery or physical or moral coercion, [manifested in] such a degree as to prejudice the mind of the testator, to destroy his free agency and to operate as a present restraint upon him in the making of a will.'") (quoting **In re Angle**, 777 A.2d 114, 123 (Pa. Super. 2001)). Moreover, in **Kern**, we declined "to ferret fraud out from a myriad of possible causes of [a] … controversy[,]" absent "a particularized allegation of fraud[.]" **See id.** Similarly, we decline here to elicit an allegation of fraud from the averments in Executor's new matter. Based on the foregoing, we conclude that Executor's allegations of undue influence must only be pled generally. **See** Pa.R.O.C.P. 3.3(c).

Mindful of the foregoing principles, we now turn to the parties' pleadings and consider whether sufficient facts have been pled to establish a claim of undue influence and/or whether material facts are in dispute, which would preclude the entry of judgment on the pleadings.

In his petition for declaratory judgment, Mark averred that Walter and Beneficiaries entered into Modification Agreements prior to Walter's death, which amended the terms of the Trusts "to allow the *su[i] juris* income beneficiaries to remove and appoint new trustees." Petition for Declaratory Judgment at ¶ 7. He alleged that Walter and Beneficiaries "all had capacity to amend the Trust Agreements, and the Modification[ Agreements] were all properly executed and otherwise compliant with the requirements for creating a valid trust amendment." *Id.* at ¶ 8 (citing 20 Pa.C.S. § 7732 (codifying the basic requirements for the creation of a trust)). *See also id.* at ¶ 32 (noting that the Modification Agreements were signed and notarized by Walter and all Beneficiaries). Following Walter's death, Mark averred that Beneficiaries merely exercised their rights under the Modification Agreements to remove Independent Trustees and to appoint Successor Trustees. *Id.* at ¶ 12. Accordingly, he sought declaratory judgment in his favor regarding the validity of the Modification Agreements and confirmation of the appointment of Successor Trustees.

Subsequently, in his motion for judgment on the pleadings, Mark emphasized that Walter was represented by his own attorney in connection with the Modification Agreements, that Walter signed the Modification Agreements, and that he intended to amend how successor trustees would be selected following his death. *See* Motion for Judgment on Pleadings at ¶¶ 10-14. *See also id.* at ¶ 12 (stating that no allegations have been made that

- 21 -

Walter's signature was a forgery); *id.* at ¶ 15 (observing that Walter's initials also appear on numerous pages of the Modification Agreements).

Executor, however, asserted undue influence as an affirmative defense to Mark's allegations. Specifically, he averred:

> On August 18, 2017, Mark Garrison and Susan Garrison, who was acting as Mark's attorney, came to [Walter's] home following his lengthy hospital stay and presented him with the signature page of a document, the entirety of which they would not permit him to read. They exerted enormous undue and unnecessary pressure and stress on [Walter] to sign the document, which [Walter] thereafter learned did not evince his intent.[19] Despite [Walter's] being represented by counsel at the time in connection with this very issue[,] … [Walter's] attorney was not invited to this meeting or otherwise informed thereof until after[ward,] when Susan sent him a copy of the purported signed [Modification Agreements].

Executor's Answer and New Matter at ¶ 7. Moreover, he asserted that Mark and Susan "improperly pressured and influenced [Walter] to sign a document which did not reflect his intent at a time when he was ill, without counsel present[,] and denied [him] the opportunity to review the document before signing [it.]" *Id.* at ¶ 8. Additionally, he stated that "Attorney Susan Garrison exercised undue influence over Walter … in derogation and in conflict of her role as attorney for an adverse party and in her own self-interest[,] which was contrary to [Walter's] desire and intent." *Id.* at ¶ 9.

---

[19] "[Walter] did not intend that any modification of the Trust[s] include any power to remove trustees, but rather that any modification would be limited to addressing the process for replacing a trustee who resigned or died after [his] death. Specifically, [Walter] contemplated a committee of 4-6 persons whose judgment he valued who would have the responsibility of appointing a successor trustee(s)." Executor's Answer and New Matter, 9/6/19, at 22 ¶ 7.

Executor expressly "denied as stated" Mark's contention that Walter intended to modify the Trusts as to "how successor trustees would be selected following his death." Answer to Motion for Judgment on Pleadings at ¶ 10; Motion for Judgment on Pleadings at ¶ 10. He clarified, rather, that "Mark and Susan approached [Walter] during his lifetime to consider a modification of the … Trusts[;]" that Walter intended any modification to be limited to amending the process for replacing trustees after his death; and that he contemplated such modification to involve a committee responsible for appointing a successor trustee, comprised of 4-6 persons whose judgment he valued. Answer to Motion for Judgment on Pleadings at ¶ 10. Executor further explained:

> This is because, during [Walter's] lifetime, the selection of trustees had been from individuals serving on the Board of Directors of CDI [Corporation ("CDI")] [20] who were recognized for their business acumen, knowledge of CDI and their personal values. It was contemplated that after [Walter's] death, and after the sale of CDI, there would be less need for successor trustees with CDI experience, but still need for trustees with business acumen and values. Thus, [Walter] envisioned a committee of individuals that [he] knew well, to ensure that these requirements would be met by persons to be offered appointment as successor trustees. [Walter] engaged counsel to represent him in connection with issues surrounding [the] possible modification of the … Trusts….
>
> Following [Walter's] release from the hospital[,] Susan, acting as attorney for Mark, improperly influenced [Walter] through an escalating pattern of directed contact and discussions with [him] over a period of decline in his health, rather than proceeding through his retained counsel whom had been engaged to

---

[20] Walter was the founder and President/CEO of CDI. Petition for Declaratory Judgment at ¶ 2.

represent him in connection with issues surrounding possible modification of the trust instruments. This escalating pattern of behavior culminated in a signing session at [Walter's] house when he was feeling ill, his attorney was not present[,] and his protestations and requests to review the documents before having to sign anything were forcefully rejected. It was … contrary to [Walter's] expressed intent that modification not include any removal of trustees….

*Id. See also id.* at ¶ 14 (averring that "Mark, acting through his sister Susan, improperly influenced [Walter] through an escalating pattern of direct contact and discussions over a period of decline in [Walter's] health, rather than proceeding through his retained counsel"); *id.* at ¶ 18 ("[A]s counsel for Mark, Susan acted as agent for Mark, furthering his and their collective interests in attempting to acquire that which no provision in [the T]rusts permitted: the ability for [Walter's] children to choose their own trustees to bypass the controls [Walter] intentionally left to a select group of chosen individuals."); *id.* at 19 ("In her representation of Mark, Susan exploited her and Mark's positions as beloved children of [Walter], raising the issue of a potential trust modification with him prior to and during a lengthy hospital stay with serious illness."); *id.* ("Susan and Mark further abused their familial associations in arranging a signing session for a document that they did not allow [Walter] to read….").

Additionally, Executor "denied as stated" Mark's allegation that Walter signed the Modification Agreements, explaining that Walter "signed a document that he was not permitted to read and that which was contrary to his stated intent." *Id.* at ¶ 12. He added that the evidence will establish the

- 24 -

Modification Agreements were "revised prior to presentation without [Walter's] knowledge or consent[.]" *Id.*[21]

We discern from the pleadings that Executor has met his burden under Rule 3.3 to generally aver the affirmative defense of undue influence. Nevertheless, even if we were to consider undue influence as a form of fraud that must be pled with particularity, we would still conclude that Executor satisfied this requirement, as the pleadings contain sufficiently detailed allegations to allow Appellants to prepare a defense and to convince this Court that the averments are not mere artifice. **See In re Estate of Schofield**, 477 A.2d 473, 477 (Pa. 1984) ("In satisfaction of the particularity requirement we have required that two conditions must always be met: the pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense, and they must be sufficient to convince the court that the averments are not merely subterfuge." (citing **Bata v. Central-Penn National Bank of Philadelphia**, 224 A.2d 174, 179 (Pa. 1966)).

Additionally, we reiterate that, to raise a claim of undue influence, Executor must only allege facts that if proven would establish the existence of

---

[21] We observe that Executor's responsive pleadings also contain allegations which, arguably, could establish that Walter suffered from a weakened intellect and that Mark would ultimately benefit from the appointment of Successor Trustees under the terms of the Modification Agreements. However, as we determined *supra* that Executor must only establish the existence of a confidential relationship in order to shift the burden to Appellants to prove that the Modification Agreements were entered into free of any undue influence, we need not recount these averments here. **See Yenchi**, *supra*; **Frowen**, *supra*; **Balogh**, *supra*.

a confidential relationship. **See Yenchi**, **supra**. Instantly, Executor claims that he has pled sufficient facts to establish a confidential relationship between Walter and either Susan or Mark. Executor's Brief at 23. First, he states that through her representation of Mark as his legal counsel regarding the modification of the Trusts, Susan exploited their position as Walter's beloved children. **Id.** at 24. She improperly contacted Walter directly regarding the proposed modifications, despite the fact that he was represented by counsel, and she arranged for a signing of the documents without Walter's attorney present. **Id.** Moreover, Susan and Mark abused their familial relationships by not allowing Walter to read the documents before signing them. **Id.** Executor argues:

> Reasonably, it can also be inferred from the totality of these allegations that Susan and Mark's position as [Walter's] children afforded a level of trust and/or reliance. [Walter] permitted [Susan] *ex-parte* contacts, despite having an attorney in place to represent him, likely because she was his daughter. [Walter] also allowed [Susan and Mark] into his home when he was ill and without his attorney, with a document that they refused to let him read, and that he later learned did not express his intent.

**Id. See also id.** at 25 ("Susan's position as [Walter's] daughter provided her access to [him] and the ability to bypass his counsel on this issue.").

Appellants dispute Executor's claim that a confidential relationship has been established, stating that Executor failed to "set forth any facts to suggest the parties did not deal on equal terms or which otherwise establish a confidential relationship." Appellant's Brief at 39 (internal quotation marks and citation omitted). Additionally, they note that Susan was acting as Mark's

- 26 -

attorney, not Walter's, and that the mere existence of a parent-child relationship has never been sufficient to establish a confidential relationship. *Id.* (citation omitted).

As the parties clearly dispute whether a confidential relationship existed between Walter, Susan, and Mark, neither party is entitled to judgment on the pleadings at this juncture. *See John T. Gallaher Timber Transfer*, 932 A.2d at 967 ("Judgment on the pleadings is proper only where the pleadings evidence that there are no material facts in dispute such that a trial by jury would be unnecessary.") (citation omitted). Due to the orphans' court's prior disposition in this matter, we observe that it never made any factual findings as to whether Walter was unduly influenced into signing the Modification Agreements. *See* OCOO at 14. *See also Rebidas*, 677 A.2d at 333 (noting that the existence of a confidential relationship is generally a question of fact to be established by the evidence). Accordingly, we affirm the orphans' court's denial of Appellants' motion for judgment on the pleadings on the grounds that genuine issues of material fact are in dispute,[22] we vacate its denial of Appellants' petition for declaratory judgment as premature, and we remand this matter for the completion of any outstanding discovery and the scheduling of an evidentiary hearing.[23]

---

[22] *See Grabowski*, *supra*; *In re Estate of Rood*, *supra*.

[23] In the event the orphans' court determines that Walter was not subjected to undue influence, it must then consider whether the Modification
*(Footnote Continued Next Page)*

Finally, we reexamine Executor's claim that the orphans' court erred in *sua sponte* determining the Estate is not a proper participant in these proceedings, as it does not have an ongoing interest in the Trusts. Executor's Brief at 13. The essence of his argument is that in the event this Court allows the Modification Agreements to stand, the error could result in the loss of the Estate's defense and its ability to present evidence to support its claims of undue influence going forward. ***Id.*** at 16-17.

In its supplemental Rule 1925(a) opinion, the orphans' court noted that the parties waived the issue of the Estate's standing in this matter, and it acknowledged that Pennsylvania law prohibits a court from raising the issue of standing *sua sponte*. Orphans' Court Supplemental Opinion ("OCSO"), 10/14/20, at 3 (citing ***In re Nomination Petition of DeYoung***, 903 A.2d 1164, 1168 (Pa. 2006); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.")). Notwithstanding, due to its disposition at the time regarding the validity of the Modification Agreements and its determination that it need not address the issue of undue influence, the orphans' court opined that its ruling regarding the Estate's lack of standing in this matter constituted harmless error. ***Id.*** at 2. We are constrained to disagree.

_____

Agreements are invalid for failure to meet the adequate representation requirements of 20 Pa.C.S. §§ 7723 and 7725, as raised in Executor's New Matter. **See** Executor's Answer in Opposition to Petition for Declaratory Judgment at 22 ¶ 5. **See also** OCOO at 2 (acknowledging that, in light of its holding regarding the extension of **Taylor** to this matter, the orphans' court did not previously address this issue).

As a result of our Supreme Court's determination that *Taylor* could not be extended to the instant matter, as well as our disposition regarding the issue of undue influence, we cannot deem the orphans' court's finding that the Estate lacked standing to be merely harmless error, as its decision would effectively prevent the Estate from presenting evidence in pursuit of its undue influence claim going forward. Hence, we vacate, in part, the orphans' court's June 16, 2020 decision to the extent that it concluded the Estate is not a proper participant to the instant proceedings.

In summary, we affirm in part and vacate in part the orphans' court's June 16, 2020 order, and we remand with instructions consistent with this opinion.

Order affirmed in part and vacated in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2023